**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**AT SEATTLE**

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br>v.<br><br>G6 HOSPITALITY, L.L.C.; G6 HOSPITALITY PROPERTY, L.L.C.; G6 HOSPITALITY FRANCHISING, L.L.C.; MOTEL 6 OPERATING L.P.; WYNDHAM HOTEL & RESORTS, INC.; RED LION HOTELS CORPORATION; SEATAC HOTELS, LLC; JAGDEV SINGH & SONS, INC.; HAUSER INVESTMENTS, LLC; GOLD INVESTMENT, LLC; and ROES 1 through 50.<br><br>Defendants. | Case No.:<br><br>Unlimited Jurisdiction<br><br>**COMPLAINT FOR DAMAGES AND INJURIES**<br><br>**JURY TRIAL DEMANDED**<br><br>**Damages in excess of $1,000,000** |

COMES NOW the Plaintiff JANE DOE, by and through the undersigned counsel, and respectfully submits this Complaint for damages and makes the following averments.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

## INTRODUCTION

1. For decades, sex trafficking ventures have blatantly operated in and out of hotels throughout the United States.

2. Major hotel brands, including Motel 6, Wyndham, and Red Lion Hotels Corporation, have made false public claims that they are "combatting human trafficking," but in stark contrast, they continue to direct their hotels to be built and/or branded where they know sex trafficking is most prevalent to profit from trafficker's room rentals and the trafficking crimes that they allow to be perpetrated on their properties. Despite major brands' public statements acknowledging the existential crisis, human trafficking continues to be most prevalent in the hotel and hospitality industry. Despite their claims, hotel brands and owners, including Motel 6, Days Inn, Travelodge, and America's Best Value Inn brands and owners thereof, continue to allow sex trafficking at their properties due to the profits they derive from it.

3. Criminals parade their misconduct openly on hotel and motel properties throughout the United States, including at thousands of Motel 6s, Days Inn, Travelodge, and America's Best Value Inn properties; and the hotels and motels profit from providing harbor for the underlying assaults and criminal activity. The hotel and hospitality industry continue to create and expand the environment for traffickers to harbor victims and neglect taking reasonable steps to prevent such criminal misconduct, instead choosing to earn a profit at the expense of human life, human rights, and human dignity.

4. Public appearances and sponsorships do not excuse corporations and individuals that have financially benefited from sex trafficking. In fact, it reveals corporate knowledge of the use of their properties and technology as hubs for human trafficking. The hotel industry has historically and presently provided the environment, place, means, and support for the human trafficking industry to become the second largest profitable criminal



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

activity in the United States.[1]

5. As the trafficking industry grows, so have Defendants and their profits through the expansion of their properties, rooms rented, and goods sold for this explicit and apparent purpose.

6. Defendant brand companies have been sued several times for their participation in sex trafficking ventures. Despite numerous survivors testifying that Defendants were all-knowing, Defendants continue to claim the sex trafficking at their properties is invisible — that they did not see it, did not know, and could not have known. Defendants lie. It was not invisible at its other properties around the country and it was not invisible at the subject properties. It was seen in the endless stream of men marching to and from the same room; and gang bangers loitering and watching. It was seen through the constant parade of unhealthy, scared, bruised and battered women brought to and from the property; and the bloody sheets and excess condoms and drug paraphernalia. It was heard in the cries, the arguments, the doors slamming at all hours. It was felt in the fear that hung in those hallways and back corners. And it was ignored.

7. Sex trafficking does not happen in a vacuum. It happens in a room. A room assigned at a front desk. A room accessed by a key card. A room captured on security cameras and monitored by staff. A room cleaned, re-rented, and profited from — over and over again. It moves through lobbies and parking lots, past employees and managers, before it is sealed behind four thin walls.  This crime needed a venue. Defendants willingly provided it.

8. JANE DOE files this civil lawsuit to hold Defendants accountable for the harm they caused her when they gave her traffickers a venue to traffic her in exchange for money. Defendants each facilitated and participated in trafficking her for sex at hotels and motels they owned, operated, maintained, managed, supervised and controlled, including the at

[1] https://www.mbfpreventioneducation.org/human-trafficking-is-now-the-second-most-profitable-criminal-activity-in-the-united-states/



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

the following properties:

(a) Motel 6, 16500 Pacific Highway S., SeaTac, Washington 98188;

(b) Motel 6, 20651 Military Road South, Seattle, Washington 98188;

(c) Motel 6, 18900 47th Ave. S., SeaTac, Washington 98198;

(d) Days Inn by Wyndham, 19527 Aurora Ave. N., Seattle, Washington 91833;

(e) Travelodge by Wyndham, 8512 Aurora Ave. N., Seattle, Washington 98103; and

(f) Americas Best Value Inn, 14817 Aurora Ave. N., Shoreline, Washington, 98133.

**PARTIES**

9. JANE DOE is a natural person and an adult woman. JANE DOE is a survivor of sex trafficking. From approximately late 2017 through approximately July 2018, when JANE DOE was just eighteen (18) to nineteen (19) years old, JANE DOE was harbored, abused, and forced to engage in commercial sex acts for the benefit of her traffickers and Defendants at Defendants' hotel and motel properties.

a. Due to the sensitive, private, and potentially retaliatory nature of these allegations, this complaint identifies JANE DOE by pseudonym and general location only. Plaintiff JANE DOE will move the court to proceed under a pseudonym in all filings, all public Court proceedings, and to limit the disclosure of information about Plaintiff JANE DOE's true identity to protect Plaintiff and her identity.

b. Generally, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved may result in retaliation or harm to the Plaintiff JANE DOE.[3] For good cause, the Court may issue an order to protect

---

[2] Fed. R. Civ. P. 10(a).

[3] See WA Cases e.g., Doe v. Penzato, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); Roe v. St. Louis

a party or person from undue harms and burdens.

c. To maintain her privacy and safety, Plaintiff JANE DOE should not be compelled to disclose her identity. Plaintiff JANE DOE's privacy interest substantially outweighs the customary practice of judicial openness.[4] Plaintiff JANE DOE escaped her traffickers and would be in danger of being forced back into trafficking, physically harmed or killed should her traffickers learn information about her through publicly filed documents in this action and learn that she is speaking out. Moreover, Defendants will not be prejudiced. Plaintiff JANE DOE will agree to reveal her identity to Defendants for the limited purpose of investigating Plaintiff JANE DOE's claims once the parties have entered into a protective order. Plaintiff JANE DOE simply seeks redaction of Plaintiff JANE DOE's personally identifying information from the public docket and assurances that Defendants will not use or publish Plaintiff JANE DOE's identities in a manner that will compromise her personal life, future safety, or employment prospects, as well as her rights to privacy after being a victim of multiple sexual abuses, sexual assault and sex trafficking.

10. Defendant Jagdev Singh & Sons, Inc. is a Washington corporation with its principle place of business in Seattle, Washington who at all times relevant owned and operated the Days Inn by Wyndham located at about 19527 Aurora Ave. N. in Seattle, Washington.

11. Defendant Hauser Investments, LLC is a Washington company formed in Washington with its principle place of business in Seattle, Washington. At all times relevant, Defendant Hauser Investments, LLC owned and operated the Travelodge by Wyndham located at 8512 Aurora Avenue N. in Seattle, Washington.

---

Univ., 2009 U.S. Dist. LEXIS 27716, *13, (E.D. Mo. Apr. 2, 2009).

[4] See WASHINGTON cases *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal citation and quotations omitted).



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

12. Defendant Wyndham Hotel & Resorts, Inc. ("Wyndham") is a corporation that brands, instructs, controls, and contracts with about 9,000 branded properties for profit, including Travelodge® and specifically the Hauser Investments LLC and the subject Travelodge as well as Days Inn® and specifically the Jagdev Singh & Sons, Inc. and the subject Days Inn where Plaintiff JANE DOE was trafficked. It is a Delaware corporation with its principal place of business in Parsippany, State of New Jersey and can be served through its registered agent in Cincinnati, Ohio.

13. Wyndham is the successor to Wyndham Worldwide Corporation and is liable under successor liability for the wrongful acts of Wyndham Worldwide Corp., so "Wyndham," as referred to herein, also includes Wyndham Worldwide Corp.

14. Wyndham shares, and at all relevant times shared, profits with franchisees and directly profited from the room rentals and goods sold for sex trafficking at its branded properties, including the subject Travelodge and Days Inn. It has known for decades that sex trafficking was occurring at its properties and branded properties, but did not and has not taken any reasonable action to prevent it at its branded properties, including the subject Travelodge and Days Inn.

15. Wyndham owned and/or had an ownership interest in, supervised, managed, controlled, and operated the subject Travelodge and subject Days Inn identified above where Plaintiff JANE DOE was trafficked.

16. Defendant Gold Investment, LLC is a Washington company formed in the State of Washington with its principle place of business in Shoreline, Washington. At all relevant times, it owned and operated the America's Best Value Inn located at 14817 Aurora Avenue N. in Shoreline, Washington.

17. Defendant Red Lion Hotels Corporation is a Washington Corporation and was headquartered in Spokane, Washington around the relevant times when Plaintiff was trafficked at its property but moved its headquarters to Denver, Colorado in about 2017.

At all relevant times, Defendant Red Lion Hotels Corporation controlled, oversaw, and managed the subject America's Best Value Inn.

18. Defendant SeaTac Hotels, LLC is a for-profit Washington corporation with its principal place of business in SeaTac, Washington. At all relevant times, SeaTac Hotels, LLC owned and operated the Motel 6 hotel at 18900 47th Avenue South, SeaTac, Washington.

19. Defendant G6 Hospitality, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

20. Defendant G6 Hospitality Property, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

21. Defendant G6 Hospitality Franchising, LLC., is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

22. Defendant Motel 6 Operating, LP., is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

23. Defendants G6 Hospitality, LLC; G6 Hospitality Property, LLC.; G6 Hospitality Franchising, LLC.; Motel 6 Operating, LP., will collectively be referred to as "G6 Defendants."

24. G6 Defendants are registered to do business in the State of Washington and may be served at Cogency Global Inc., 1780 Barnes Blvd. SW, Tumwater, Washington 98512.

25. G6 Defendants and its brand Motel 6® properties include the locations at 20651 Military Rd S, Seattle WA 98188; 16500 Pacific Highway South, Seattle, Washington; and 18900 47th Avenue South, SeaTac, Washington.

26. At all relevant times, G6 Defendants owned, operated, managed, maintained, inspected, secured, supervised, and controlled the following locations; and transacted business in the State of Washington and purposefully availed itself to the State of Washington through its operation, control and ownership of the following Motel 6



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

locations:

a. Motel 6, 20651 Military Rd S, Seattle WA 98188

b. Motel 6, 16500 Pacific Hwy, SeaTac, WA 98188

27. At all relevant times, G6 Defendants maintained, inspected, supervised, branded and controlled the following location; and transacted business in the State of Washington and purposefully availed itself to the State of Washington through its operation and control of the following Motel 6 location: Motel 6, 18900 47th Ave. S., SeaTac, WA 98188.

28. As hotel operators and controlling-entities, G6 Defendants, Wyndham, and Red Lion Hotels Corporation ("Red Lion") control the training, policies and operations for its branded properties, including the subject Motel 6 locations, the subject Travelodge and the Days Inn, and the subject Americas Best Value Inn, respectively, and did at all relevant times when they allowed Plaintiff JANE DOE to be trafficked at their properties. Through each of their agency and employment relationships with the staff at the subject properties and the business relationship with the individuals who trafficked Plaintiff JANE DOE at their hotels and motels, G6 Defendants, Wyndham and Red Lion knowingly benefited and received money from the room rentals as a direct result of their participation in a venture, which it knew or should have known was engaged in sex trafficking.

29. At all relevant times, G6 Defendants, Wyndham, and Red Lion (the "parent companies") exercised control over each of their franchisees for the subject properties franchised. G6 Defendants directly owned two of its locations where Plaintiff was trafficked when she was trafficked and franchised one; at all relevant times, G6 Defendants, Wyndham, and Red Lion received a percentage of the gross room revenue from the money generated by the operations of their respective branded properties at issue in this case: Motel 6®, Days Inn®, Travelodge®, and Americas Best Value Inn®, including a percentage of the revenue generated for the rate charged on the hotel guest rooms at their properties in which Plaintiff JANE DOE was abused, raped and trafficked for sex.

30. G6 Defendants is one of the largest hotel brands in the world. G6 Defendants control, market, brand, and hold itself out as the owner and controller of dozens of budget motels under the brand Motel 6® in the state of Washington, including the subject Motel 6 locations. At all relevant times, G6 Defendants directly owned, controlled and operated the Motel 6s located on Military Rd. in Seattle, Washington and Pacific Highway in SeaTac, Washington.

31. Whenever reference is made in this Complaint to any act, deed, or conduct of G6 Hospitality Property, LLC, Motel 6 Operating, L.P., and/or Seatac Hotels, LLC (the "Motel 6 Location Defendants"), the allegation is that the Motel 6 Location Defendants engaged in the act, deed or conduct by or through one or more of their officers, directors, agents, staff, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the G6 Defendants.

32. Whenever reference is made in this Complaint to any act, deed, or conduct of the G6 Defendants, the allegations is that the G6 Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, staff, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the G6 Defendants and the Motel 6 Location Defendants.

33. Whenever reference is made in this Complaint to any act, deed, or conduct of Hauser Investments LLC, the allegation is that the Hauser Investments LLC Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Hauser Investments LLC Defendants and Wyndham.

34. Whenever reference is made in this Complaint to any act, deed, or conduct of the Jagdev Singh & Sons, Inc., the allegation is that the Jagdev Singh & Sons, Inc. Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors,

agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Jagdev Singh & Sons, Inc. and Wyndham.

35. Whenever reference is made in this Complaint to any act, deed, or conduct of Wyndham, the allegation is that Wyndham engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Wyndham, and the Hauser Investments LLC and Jagdev Singh & Sons, Inc. defendants.

36. Whenever reference is made in this Complaint to any act, deed, or conduct of the Gold Investment LLC, the allegation is that the Gold Investment, LLC Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Gold Investment LLC and Red Lion.

37. Whenever reference is made in this Complaint to any act, deed, or conduct of Red Lion, the allegation is that Red Lion engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Red Lion and the Gold Investment LLC defendants.

38. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as ROES 1 through 50, inclusive, are presently unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences

herein alleged and that Plaintiff's injuries were proximately caused by their conduct.

39. At all relevant times, each G6 Defendant was the agent, servant, employee, partner, joint venturer, alter ego, or co-conspirator of the remaining G6 Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and with the knowledge, permission, and consent of the other Defendants.

40. At all relevant times, each ROE Defendant was the agent, servant, employee, partner, joint venturer, alter ego, or co-conspirator of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and with the knowledge, permission, and consent of the other Defendants.

41. Plaintiff is informed and believes that the Roe Defendants include, but are not limited to:

- owners, operators, and managers of the subject hotel properties;
- employees, front desk staff, housekeepers, and maintenance personnel;
- security personnel and contractors;
- franchisees and franchise operators;
- corporate officers, supervisors, and decision-makers;
- property management entities; and
- other persons or entities who participated in, facilitated, enabled, ignored, or financially benefited from the trafficking venture described herein.

42. Plaintiff is further informed and believes that each Roe Defendant knowingly participated in, assisted, facilitated, enabled, permitted, ratified, or failed to prevent the sex trafficking of Plaintiff occurring at the subject hotel properties, despite actual or constructive knowledge of clear indicators of trafficking and the trafficking venture that trafficked Plaintiff.

43. Plaintiff is informed and believes that each Roe Defendant participated in, directed, authorized, controlled, ratified, or otherwise caused the wrongful acts alleged herein,

including acts and omissions that allowed Plaintiff's trafficking to occur and continue at the subject hotel properties.

## JURISDICTION AND VENUE

44. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

45. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, led to injuries that occurred in the judicial district where this action is brought.

46. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of the County of King, State of Washington, and all Defendants are registered to do business in the State of Washington.

## SEX TRAFFICKING UNDER FEDERAL LAW

47. Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[5]

48. The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

49. "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

---

[5] 18 U.S.C. §1591; 22 U.S.C. § 7102.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

50. The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11).

## FACTUAL ALLEGATIONS

### The Hotel Industry's Role in Sex Trafficking.

51. While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of all illegal drugs.[6]

52. The hospitality industry plays a crucial role in the sex trade.[7] Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Despite the known risks and known trafficking crimes, Hotels, including the subject locations, offer anonymity and non-traceability to the traffickers, making them ideal venues for crime and sex trafficking, in particular. Hotels, including the subject hotels and owners, knowingly harbor traffickers and those trafficked.

53. Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[8] For years, sex traffickers have "been able to reap their profits with little risk when attempting to operate within hotels."[9]

---

[6] Profits and Poverty: The Economics of Forced Labor. May 24, 2014. International Labor Organization. Available at: http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index htm.

[7] Cavagnaro, Giovanna L. C. 2017. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Cornell University School of Hotel Administration. Available at: http://scholarship.sha.cornell.edu/honorstheses/3.

[8] This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us- slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.

[9] See Human Trafficking in the Hotel Industry, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; see also Eleanor Goldberg, You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic, Huffington Post (June 2016),



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

54. According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. Traffickers and buyers alike frequently use hotel rooms to exploit victims.

55. In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels. Hotels have been found to account for over 90% of commercial exploitation of children.

56. Due to the overall complacency, complicity, reckless disregard in addressing, and often times knowing choices of the hospitality industry not to address the known issue of sex trafficking, hotels are the venue of choice for sex trafficking. Traffickers and buyers capitalize on the hotel industry's general refusal to (1) adopt and enforce companywide anti-trafficking policies from the corporate to the property level, (2) train staff on what to look for and how to respond, and/or (3) establish safe and secure reporting mechanisms for those on the front lines.

57. Every day, at least thousands of hotel employees witness red flags and manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur and where it has been known for decades to occur.

58. In addition to their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation and should be held accountable when or if they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

59. Estimates by attorneys for the hospitality industry indicate that eight (8) out of ten

---

http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

(10) arrests for human trafficking occur in or around hotels.[10] The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.

60. The complicity of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with certain hotel chains that tend to protect them, including the Motel 6 and G6 brands, Travelodge, Days Inn and America's Best Value Inn— they know it is unlikely that they will be disturbed. In fact, Defendants' employees and agents operating the Travelodge, Days Inn, America's Best Value Inn, and Motel 6 locations in this case were friendly with Plaintiff JANE DOE's traffickers and showed they knew that Plaintiff JANE DOE's traffickers were trafficking Plaintiff JANE DOE and forcing her to have commercial sex at the subject locations.

61. Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry since at least the early 2000s, including Defendants, on best practices for identifying and responding to sex trafficking. This started years before Plaintiff JANE DOE was trafficked at Defendants' properties.

62. Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Washington Attorney General, Love 146, BEST, and EPCAT, among numerous others, have established recommended policies and

[10] U.S. Dep't of State. 2016. 2016 Trafficking in Persons Report, at 387. Available at: https://www.state.gov/documents/organization/258876.pdf.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

procedures for recognizing the signs of sex trafficking.[11] This was known or knowable to Defendants before and at the time Plaintiff JANE DOE was being trafficked at their properties.

63. Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of and were aware or should have been aware of at all subject times of the trafficking alleged herein, are specific to the hotel industry. These include learning to identify warning signs and indicators of sex trafficking at hotels and lodging, including but not limited to:

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;
- Individuals show signs of physical abuse, restraint, and/or confinement;
- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;
- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
- Individuals lack freedom of movement or are constantly monitored;
- Individuals avoid eye contact and interaction with others;
- Individuals have no control over or possession of money or ID;
- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;
- Individuals have few or no personal items—such as no luggage or other bags;
- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;
- A group of girls appears to be traveling with an older female or male;

[11] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

- A group of males or females with identical tattoos, scars, or markings in similar locations. This may indicate "branding" by a trafficker;
- A group of females being controlled by one or more males;
- Being controlled by or drug abuse or frequent use of drugs such as GHB, Rohypnol, Ketamine, fentanyl, MDMA (Ecstasy), heroine, Methamphetamines, and Cocaine;
- Possession and presence of excessive sexual paraphernalia such as condoms or lubricant;
- Requesting more towels than an average guest would normally use;
- Condoms, drug paraphernalia, bondage, bloody towels found in rooms or trash;
- Lack of legal identification or fake identification;
- Females with visible signs of injury, past or present;
- Non-guests coming in and out of the room;
- Money exchanged in parking lots or common areas combined with foot traffic in and out of a room;
- Possession or use of multiple cell phones; and
- Possession or use of large amounts of cash or pre-paid cards.

64. At all times of trafficking alleged herein, Defendants, and each of them, understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Defendants, and each of them, knew or should have known that signs of commercial sex or "prostitution" activity in their hotels were in fact signs of sex trafficking, and their own training materials taught the same, and each Defendant saw or should have seen signs of the sex trafficking of Plaintiff JANE DOE that were observable to Defendants.

65. At and before the time of Plaintiff being trafficked, Defendants, and each of them,



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

were aware or should have been aware of these signs of sex trafficking when operating, inspecting, monitoring, controlling, and managing their hotel properties, including the subject properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

66. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to sex trafficking, it has become apparent that the decision of a hotel chain—here Defendants—to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels, is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

**G6 Defendants Knowingly Benefit from Participation in a Venture with Each Other, SeaTac Hotels LLC and Plaintiff's Non-Hotel-Employee Traffickers.**

67. G6 Defendants own locations and lend their name and likeness to third party owners, while the building and operations are under the brands' supervision and control. This is done through brand standards, franchise agreements, and maintaining control over all aspects of operations. This allows the parent brand to exchange the high risk that is inherent in owning an asset like a motel for the low risk associated with owning a property contract or franchise contract and still profit. Because of this, the motel locations and parent brands are inextricably intertwined. Here, Motel 6 Hotel Location Defendants and G6 Defendants are inextricably intertwined.

68. Additionally, the following Motel 6® locations were directly owned and operated by a G6 Defendant Entity, G6 Hospitality Property, LLC so they are even more intertwined since G6 Defendants essentially all operate together and share the same information, data, profits, revenue and are controlled by the same individual people: Motel 6, 16500 Pacific Hwy, Seatac, WA 98188; Motel 6, 18900 47th Ave. S., Seatac, WA 98188.

69. The average customer does not see the franchisor/franchisee relationship. The



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

parent brand gives the franchisee or individual property its identity. The parent brand provides the signage that assures customers that if they check into that hotel they can expect the standards consistent with the parent brand. The motel 6s are advertised as motel 6s, not a motel owned by anyone other than G6. The G6 Defendants hold themselves out to the public as the owners of the properties. Brand requirements and rules are contractual with the power to control weighed heavily toward the corporate parent brand. The Brand, here G6 Defendants, retain control over the properties.

70. At all times of trafficking alleged herein and currently, booking and room reservations are controlled by the corporate parent brands, the G6 Defendants.

71. Upon information and belief, at all times of trafficking alleged herein and currently, the franchised Motel 6 Location Defendants typically pay and paid a percentage of their total revenue back to the G6 Defendants and is required to develop and maintain the property in accordance with the parent brand G6 Defendants' standards as they are laid out in the franchise agreements. G6 retains the right of entry and inspection, response to crime, response to trafficking, and trainings related to the same.

72. Upon information and belief, per the agreements, the G6 Defendants may enforce standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate, unsafe, or operating in violation of any laws. The right of the G6 Defendants to enforce their brand standards, including safety standards, is not just their right but their responsibility. Here, G6 Defendants did have employees in charge of inspecting and that did inspect the properties at relevant times when plaintiff JANE DOE was being trafficked there and who did see all of the red flags of Jane Doe being trafficked and who knew or should have known that she, as well as several others, were indeed being trafficked for sex for long periods of time at their Motel 6 locations, including its franchised location on 47th Avenue. Defendants officers, directors, managers and employees directly controlled every single aspect of operations at the





SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

Military Rd. and Pacific Highway locations; and they controlled most operations with the right to end their franchising contract at any time for the 47th Avenue location.

73. At all times of trafficking alleged herein, G6 Defendants dictated franchisee policies related to safety, security, human trafficking, employee training and franchisee's response to crime. As to the properties they owned, they dictated every single aspect of day-to-day operation and are directly responsible for their employees, managers, supervisors, regional managers, officers, directors and agents conduct in knowingly facilitating, aiding, abetting, and allowing trafficking to occur at the subject Motel 6 locations for profit.

74. Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject motels passed through a system operated and managed by the G6 Defendants.

75. Defendants profited from the sex trafficking of Plaintiff JANE DOE when they rented rooms to Jane Doe and/or her trafficker when they knew or should have known that human trafficking was occurring due to several red flags being apparent and visible.

76. Defendants directly benefited from the steady stream of income that Jane Doe's trafficker, and many other traffickers, brought to their motels and motel brands. Defendants profited from each and every room that Jane Doe's trafficker rented where Jane Doe was harbored and maintained for the purpose of sex trafficking.

77. Defendants facilitated the trafficking through its practices, policies, and procedures. They failed to take appropriate action to prevent the trafficking of individuals, including Jane Doe, for sex so they could continue to profit from the room rentals, and business that trafficking brings. They accommodated Plaintiff JANE DOE's trafficker's requests, allowed cash payments for extended periods on a daily basis, allowed men to parade in and out despite not being guests, allowed money exchanges to take place in front of them; and saw JANE DOE, who looked very young, being drugged and controlled by older men that looked like gang members, and watched and heard physical abuse and rape occurring daily



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

while Plaintiff JANE DOE was trafficked at each property for long periods of time regularly.

78. G6 Defendants and Motel 6 Location Defendants owned and operated the subject Motel 6 locations while buyers paraded in and out of rooms rented for the purpose of trafficking Jane Doe. Their staff and agents observed and should have observed the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Jane Doe. Their staff and agents observed or should have observed the trafficking occurring regularly and for multiple days at a time at the subject hotel locations but allowed it so they could profit.

79. Plaintiff JANE DOE's trafficking at the subject hotel locations was a result of G6 Defendants and the Motel 6 Locations Defendants' participation in a venture with each other as well as Jane Doe's criminal trafficker. If G6 Defendants and Motel 6 Locations Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe's trafficking at the subject hotel locations and Jane Doe would not have suffered the harm that she did there.

80. Despite its actual or constructive knowledge that the venture it was engaged in was in violation of 18 U.S.C. §§1591(a) and 1595(a) through the conduct of motel staff and the widespread trafficking at the subject motel locations named herein, G6 Defendants participated in the venture by continuing to associate with the motel staff and with other Motel 6 Location Defendants to operate the hotel locations named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a) including trafficking of victims like Jane Doe.

81. G6 Defendants and Motel 6 Location Defendants financially benefited from renting rooms to Jane Doe and Jane Doe's trafficker on numerous occasions since they benefited each day that Jane Doe was forced to engage in commercial sex at each of the Motel 6 locations for years. At all times relevant, upon information and belief, G6 Defendants were



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

benefiting during and after all were directly notified of the commercial sex and numerous red flags of sex trafficking at the subject Motel 6s through direct employee reports, customer reports, law enforcement, and the public.

82. G6 Defendants participated in this venture through the conduct described herein as they were jointly responsible for relevant aspects of motel operations at the subject motel locations.

**Wyndham knowingly benefits from participation in a venture with Jagdev Singh & Sons, Inc. and Hauser Investments, LLC; and with Plaintiff's Non-Hotel-Employee Traffickers.**

83. Hotel brands, including Wyndham, own properties and lend their name and likeness to third party owners while the building and operations are under the brands' supervision and control through brand standards, franchise agreements, inspections, reports, authority, and otherwise maintaining control over all aspects of operations. In return, the parent brand attempts to exchange the high risk that is inherent in owning an asset like a hotel property for the low risk associated with owning a local property or franchise contract and still profits from filling the rooms and its operations. As such, the hotel and parent brands—here the Hauser Investments LLC defendants, Jagdev Singh & Sons, Inc. defendants and Wyndham –are inextricably intertwined.

84. The average consumer does not see this relationship and believes what is advertised—that the brand owns, operates, and is responsible for every part of the hotel. The parent brand gives the franchisee property its identity. It provides signage on and in front of the building that assures customers that if they check into that hotel, they can expect the standards consistent with the parent hotel brand. The parent/brand companies—here, Wyndham holds themselves out to the public as the owners of the properties. The same brand inscribed on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk, advertise that the parent/brand owns and controls the hotel. The brand also controls safety, safety training, crime response, its reputation, the



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

properties' image, the brand image, the brand standards and rules, and the brand policies and procedures related to minimum safety standards. These brand requirements are contractual with the power to control weighed heavily towards the corporate parent brand.

85. At all times of trafficking alleged herein and currently, in addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS) and other online travel agency databases, the brand provides the franchise hotel with access to its brand-wide central reservation system, 800 number, revenue management tools, world-class loyalty programs, point systems, information and data, and a website. Thus, booking and room reservations are controlled by the corporate parent brand.[12] Here, Wyndham provided the other Travelodge and Days Inn Owner Defendants with the same and Wyndham controlled and had access to the subject bookings and room reservations.

86. Wyndham represents to the public that Travelodge by Wyndham and Days Inn by Wyndham properties have consistently doubled room openings year after year. It's clear that Wyndam is concerned with profit and not people or people's safety. Upon information and belief, at all times of trafficking alleged herein and currently, the Travelodge and Days Inn Owner Defendants pay Wyndham a significant percent of their total revenue back and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement and other agreements.

87. Upon information and belief, per the franchise agreement, the parent brand, Wyndham, may enforce its standards through periodic and regular inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate. The right of the parent hotel brand, Wyndham, to enforce their brand standards, including

---

[12] Meyer, Ellen. April 10, 2018. "The Origins and Growth of Franchising in the Hotel Industry." Lodging Magazine.
Available at: https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.

safety standards, is also their responsibility. This was true before and at the time of all trafficking alleged herein.

88. At all times of trafficking alleged herein, Wyndham dictated franchisee and direct local property policies related to safety, security, human trafficking, employee training and Franchisee's response, as well as other subjects.

89. Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject hotels passed through a system operated and managed by Wyndham and was advertised and facilitated by Wyndham.

90. Wyndham owns, operates, supervises, controls, and/or manages the brand and policies for bookings, rates, and operations, at the Travelodge® and the subject Travelodge located at 8512 Aurora Ave, Seattle, Washington as well as the Days Inn® and subject Days Inn located at 19527 Aurora Ave, Seattle Washington – both locations where Plaintiff JANE DOE was commercially sex trafficked for weeks and days at a time off and on at Wyndham's owned and operated location, from about January 2018 through April 2018. She was noticeably transported, harbored, and forced to be at these locations under physical force and coercion, abused and threatened, while her body was sold and purchased for commercial sex acts.

91. Wyndham, Jagdev Singh & Sons, Inc. and Hauser Investments, LLC facilitated the sex trafficking of Plaintiff through its practices, policies, and procedures. Wyndham and Travelodge® and Days Inn®, including the respective owners, managers, and agents, failed to take appropriate action to prevent the trafficking of individuals, including Plaintiff JANE DOE, for sex so that Wyndham and Wyndham, Jagdev Singh & Sons, Inc. and Hauser Investments, LLC could continue to profit from the room rentals and business that trafficking brings, including business from all over the state, country, and world.

92. Wyndham, Jagdev Singh & Sons, Inc. and Hauser Investments, LLC owned and operated their respective properties, while buyers paraded in and out of rooms rented for



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

the purpose of trafficking victims/survivors, including Plaintiff JANE DOE. Wyndham, Jagdev Singh & Sons, Inc. and Hauser Investments, LLC and their employees observed and should have observed the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Plaintiff JANE DOE. Defendants Wyndham, Jagdev Singh & Sons, Inc. and Hauser Investments, LLC's employees and agents observed and should have observed the trafficking occurring regularly and for multiple days at a time at the subject Travelodge and Days Inn with signs and sounds of abuse, a very young woman with older males that looked like they were in gangs, Plaintiff looking bruised and unhealthy, foot traffic in and out, drugs and Plaintiff looking drugged, and cash payments daily for multiple days. Defendants directly knew about the trafficking through its agents' and employees' relationship with Plaintiff JANE DOE's traffickers and many other traffickers that frequented the hotels.

93. Wyndham, Jagdev Singh & Sons, Inc. and Hauser Investments, LLC. all financially benefitted from renting hotel rooms to Plaintiff JANE DOE's non-employee traffickers on numerous occasions.

94. Wyndham, Jagdev Singh & Sons, Inc. and Hauser Investments, LLC operated the subject Travelodge and Days Inn with knowledge that constant sex trafficking was occurring at the properties and that non-employee sex traffickers frequented the properties, and chose to facilitate the trafficking by allowing rule violations and not implementing policies regarding responding to and preventing sex trafficking. Defendants made exceptions for the traffickers and trafficking at these properties because the money derived from it was most of their income there.

**<u>Red Lion Hotels Corporation Knowingly Benefits from Participation in a Venture with Gold Investment LLC and Plaintiff's Non-Hotel-Employee Traffickers.</u>**

95. Defendant Red Lion is a hospitality company engaged in the franchising, management, and ownership of hotels operating under brands including America's Best

Value Inn.

96. Red Lion developed and operates a system of branded hotels across North America consisting of company-owned, managed, and franchised properties.

97. As part of its business model, Red Lion licenses its brands and proprietary systems to hotel owners who operate properties under Red Lion trademarks in exchange for franchise fees and other revenue payments while maintaining control over data, systems, operations, safety and crime response.

98. Red Lion's franchised hotels generate revenue for the company through royalty payments based on hotel revenue via room rentals and other recurring fees. Red Lion benefits per room rental, including the rooms rented for sex trafficking.

99. Red Lion operates a franchise system that allows other persons and entities to "own" hotels and operate under Red Lion brand names while remaining part of a centralized network, which is Red Lion's operational network.

100. Through franchise agreements and corporate policies, Red Lion maintains substantial control over branded hotels, including: (1) mandatory brand standards; (2) reservation systems; (3) national marketing programs; (4) operational guidance, mandates, rules and training; (5) quality assurance inspections; (6) area managers and management oversight of the franchisee; (7) loyalty programs and technology systems; (8) data regarding customers, incidents, crime and safety issues; (9) right to enter; (10) and the ultimate right to end a contract at any time upon breach of law, rules and policies. These systems allow Red Lion to monitor hotel operations and maintain uniform standards across properties.

101. Upon information and belief, Red Lion reserves the right to enter and inspect, and does so regularly enter and inspect, it franchised properties, including the subject Americas Best Value Inn at times relevant to Plaintiff's trafficking in this case and when Plaintiff was being abused and trafficked there. Plaintiff's trafficker took her to America's

Best Value Inn on multiple occasions and Plaintiff could see that sex trafficking was pervasive and going on all around the hotel in front of Defendant Red Lion and Gold Investment, LLC's employees and agents. The red flags of her trafficking described herein also took place at the subject America's Best Value Inn in front of Defendant Red Lion and Gold Investment LLC's employees and/or agents such that they knew or should have known about it but continued to accept payments for rooms for the same.

102. At all times relevant, franchisees, including Gold Investment, LLC, must comply with brand standards to continue operating under Red Lion's trademarks and reservation systems. Red Lion knew about and allowed sex trafficking at the subject America's Best Value Inn and yet continued to allow the subject property to operate under its systems and made exceptions to its own rules so that it could continue to profit from the rentals.

103. At all relevant times, Red Lion retained authority to conduct inspections and enforce brand compliance and did conduct inspections and maintain a presence at the property regularly. Upon information and belief, at all times relevant, Red Lion had employees whose jobs it was to manage and oversee the operations of the subject America's Best Value Inn.

104. Before and during Plaintiff being trafficked at the America's Best Value Inn, Red Lion and Gold Investment LLC derived financial benefit from the subject America's Best Value Inn room rentals when sex trafficking ventures were generating repeated room rental revenue and extending stays there, which increased hotel occupancy and revenue to defendants.

105. Red Lion directly benefited from the room rentals that Plaintiff's non-hotel-employee traffickers rented for the explicit and apparent purpose of trafficking Plaintiff for sex. This was while numerous red flags of Plaintiff and others being trafficked by her traffickers were present and visible and audible to Defendants' employees and agents at the hotel.

106. At all times relevant, by and through its employees, Gold Investment LLC knew that sex trafficking was taking place at the hotel when Plaintiff was being trafficked for sex there and knew and/or should have known Plaintiff was being trafficked for sex.

107. At all times relevant, by and through its employees, Gold Investment LLC knew that sex trafficking was taking place at the hotel when Plaintiff was being trafficked for sex there and knew and/or should have known Plaintiff was being trafficked for sex.

108. Upon information and belief, Red Lion trained its employees and agents working at the subject America's Best Value Inn to look for the red flags of sex trafficking and that the red flags were signs of sex trafficking and proof that such was occurring, including but not limited to bruised or battered girls or young women with older or dominant men, girls or women drugged on property, weapons, gang activity, foot traffic to and from rooms from non-guests, violence, domestic abuse, and women looking down, unhappy and unhealthy. When Plaintiff was trafficked there, all red flags existed. Plaintiff's traffickers also trafficked others there, and other trafficking operations were operating in plain sight. Because of this, Red Lion and its agents and employees knew or should have known trafficking was occurring in the rooms rented that were generating revenue for them, and knew or should have known they were benefiting from Plaintiff being trafficked for sex.

109. Despite this knowledge, Red Lion failed to implement or enforce reasonable policies necessary to prevent it or stop it; and Red Lion made exceptions to their own policies regarding identifying and calling the police, in order to facilitate it and continue to benefit from it.

110. In multiple civil lawsuits, survivors of trafficking have alleged that traffickers used hotel properties affiliated with Red Lion to facilitate commercial sex acts. Survivors have alleged that traffickers repeatedly rented hotel rooms where victims were forced to engage in commercial sex acts with multiple buyers.

111. In one such lawsuit, a trafficking survivor alleged that she was trafficked at various



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

hotels—including Red Lion locations—in Oregon and Washington between approximately 2012 and 2013. According to those allegations, the trafficker would arrange sexual encounters through advertisements and bring buyers to the hotel rooms where the victim was forced to engage in commercial sex acts.

112. Victims in these other cases against Red Lion reported that they were forced to engage in sex acts with multiple men per night while their traffickers waited nearby or monitored the activity, all in view of hotel staff and Red Lion's agents. Survivors in many other Red Lion lawsuits allege that the sex trafficking was open and obvious at the Red Lion properties such that Red Lion knew and allowed it. That is what occurred here too.

**Defendants Knew or Should Have Known that Their Employees and Agents at and Overseeing the Respective Properties—the Subject Motel 6 Locations, Travelodge, Days Inn, and America's Best Value Inn -- were Participating in and Facilitating Violations of Anti-trafficking Laws.**

**a. Motel 6, Travelodge, Days Inn, and America's Best Value Inn Properties are Known to Be Common Sex Trafficking Locations.**

113. Defendants' knowledge is not limited to a general awareness of the problem of sex trafficking in the hotel industry. Defendants have known, since well before Plaintiff JANE DOE's trafficking, that sex trafficking was ongoing and widespread at Motel 6s, Travelodge, Days Inn and America's Best Value Inn properties, including the subject properties named herein.

114. Use of G6 Defendants', Wyndham's and Red Lion's branded properties for sex trafficking is well known to all Defendants. Their budget hotels are some of the top chains most frequently identified as a site of sex trafficking in federal criminal complaints.

115. A Los Angeles Motel 6 became such a hub for human trafficking and other criminal activity that G6 Defendants paid to settle a public nuisance lawsuit related to such trafficking filed by the City of Los Angeles just before the sex trafficking happened to



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

Plaintiff in this case.[13]

116. G6 Defendants, Wyndham, and Red Lion knew staff at its branded properties were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at their branded properties, including but not limited to not implementing policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or "IDs;" allowing daily payments of cash for extended stays; complying with requests for rooms to be rented away from other guests; allowing traffickers to escort bruised and battered women to rooms without IDs; allowing several buyers to come in and out of the rooms victims were trafficked in without ID; ignoring yelling and screaming from rooms where trafficking took place; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

117. The Los Angeles nuisance settlement in around 2017 required G6 Defendants to change policies that were facilitating sex trafficking.[14] G6 knew from that lawsuit, from many prior lawsuits, and from their personal knowledge about sex trafficking at their properties that their policies were facilitating sex trafficking. At all times relevant in this Complaint and currently, G6 Defendants have failed to adequately implement and enforce such changes.

118. Public statements of G6 Defendants confirm that they knew before and during the sex trafficking of Plaintiff JANE DOE that sex trafficking is a problem in the hotel industry, sex trafficking was occurring at their branded hotels, and that they retained

---

[13] Motel 6 pays $250,000 to settle human trafficking suit (Aug. 31, 2017), https://www.cbsnews.com/news/motel-6-pays-250000-to-settle-human-trafficking-suit/.

[14] *Id.*



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

control over the response of their branded hotels to this problem. G6 Defendants recognized that "[t]raffickers often use hotels and motels for sex trafficking activities due to the privacy extended to guests."[15] They also acknowledged the significant role G6 Defendant have in the three D's: deterring, detecting, and disrupting sex trafficking in their branded hotels.[16]

119. Wyndham also has put out several public statements over the past ten (10) to fifteen (15) years indicating they know that sex trafficking is a problem in the hotel industry and at their hotels and claiming that they will be committed to fight against it.

120. Upon information and belief, Defendant Wyndham and G6 Defendants signed "the Code" several years ago and thereby promised to adopt policies to combat trafficking.[17] Yet, Defendants have failed to implement most, if not all of these policies.

121. Defendant Wyndham is a face and signor of the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking, and Wyndham publicly committed to participate in the programs shown to assist in identifying and preventing sex trafficking inside its brand hotels. Therefore, Wyndham should not only have created effective mandatory Brand standards to be mandated at its branded properties, but it should also have enforced them. Despite Wyndham's direct and vicarious knowledge of trafficking at its hotel, it did not create, implement or enforce effective standards to prevent the trafficking it knew its properties were facilitating.

122. G6 Defendants acknowledge on its website that it controls the policies, procedures, training, and codes of conduct that have facilitated sex trafficking at its branded hotels, which was the same at the subject Motel 6 locations where Plaintiff JANE DOE was

[15] G6 HOSPITALITY ANTI-HUMAN TRAFFICKING TRAINING, http://g6propertycollateral.com/wp-content/uploads/2020/02/G6_TheRoomNextDoor_Training_V12b_NoFacilitator.pdf

[16] *Id.*

[17] *See Our Code Members,* ECPAT, https://www.ecpatusa.org/code-members



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

trafficked and abused.[18]

123. Wyndham has published reports indicating that it controls and implements anti-trafficking policies at its branded hotels and its website directs consumers to information regarding the same.

124. Acknowledging crime at its properties, Red Lion has stated publicly "The safety and security of our employees has always been a top priority… RLH Corp has current training and procedures in place… and training and procedures for our franchise brands to address emergency situations." In response to lawsuits against it, Red Lion has claimed it does not condone human trafficking and that their staff are trained to recognize trafficking indicators, which shows their staff knew or should have known that the indicators/red flags described herein were in fact sex trafficking.

125. G6 Defendants claim to take a zero policy against sex trafficking at its Motel 6 Brand locations, but G6 Defendants intentionally ensure its hotels are "strategically located . . . close to airports, freeways, and other thoroughfares" making them attractive venues for trafficking and compelled prostitution.[19] For years, G6 Defendants have chosen to place their branded properties, including the subject properties, in known trafficking areas/hubs.

126. Defendants Red Lion and Wyndham, and their franchisee defendants in this case, chose specifically to place and operate their subject hotels along Aurora Avenue in the Seattle area. Aurora Avenue North—often referred to locally as "the Blade"—is a stretch of roadway in North Seattle along State Route 99 that has been widely reported as one of the city's primary corridors for street prostitution and sex trafficking activity. The term "Blade" is slang used in several cities to describe areas where commercial sex markets operate openly along the street.

---

[18] https://g6hospitality.com/combating-human-trafficking/

[19] Motel 6 – An Iconic American Brand, https://g6hospitality.com/our-brands/#about-motel-six (last visited March 27, 2024).



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

127. Law enforcement has described the above "blade" stretch as "a longstanding public safety challenge with human trafficking, street prostitution, drug dealing, and gun violence." The relevant corridor contains roughly a dozen or more motels and hotels, which law enforcement has repeatedly directly linked to prostitution and trafficking investigations for years, including the Days Inn and Travelodge.

128. The Aurora "blade" has long functioned as an "open-air" commercial sex market where buyers drive along the roadway to solicit sex workers and trafficking victims directly and are brought back to the hotels along that strip. Traffickers stand or monitor in vehicles nearby and stand watch over their victims, often with guns and other weapons.

129. SeaTac is another known hotspot for sex-trafficking. The G6 Defendants have operated the subject three Motel 6s there for several years and were well-aware of the fact that their motels there were in a sex-trafficking hotspot.

130. Over time, websites have been used more in place of open-air sex trafficking to get buyers into the hotels. Traffickers use the hotels' wifi to place trafficking ads online, which is traceable back to the hotel wifi. Plaintiff's traffickers used the Defendants' wifi at the subject hotels to post ads for trafficking. This is detectable and something that Defendants knew or should have known. Simple online data collection and analyses, costing less than $25,000 per year, would give each Defendant a full analysis of the sex trafficking occurring at their specific hotels based on ads posted, wifi used, phone numbers used and other information that can help them to identify and stop it. Instead of taking action to stop it, Defendants have either rejected the information from third parties, ignored the information, or chosen not to invest such a relatively small amount of money for nationwide data that could help them stop it.

131. Despite reports, police activity and investigation of trafficking at the subject hotels, and direct knowledge of trafficking at the subject hotels of Defendants, it did not change its ways or policies and procedures no matter how many people it hurt over the years.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

132. Wyndam claims in a recent public report that it "continues to work to enhance policies and mandate training for all team members to help them identify and report suspected trafficking activities." Thus, it knows it is a problem and has been a problem for years.

133. At the time of the trafficking alleged herein, Red Lion, G6 Defendants and Wyndham policies and procedures provided the means for sex trafficking to harbor victims by providing low-rate rooms, accepting cash as payment, relaxed identification policies and sometimes not requiring any ID, not requiring IDs for persons entering and exiting the hotels, not requiring IDs to match credit cards, not providing adequate security, allowing doors to be broken and open, and providing multiple room keys for a single person.

134. Upon information and belief, before and at the time Plaintiff JANE DOE was trafficked at the subject hotels, each of the local owners and defendants monitored criminal activity occurring at their respective properties and were aware of activity indicating commercial sex, sex trafficking and related crimes occurring at those branded hotels, including regularly the specific hotel properties where Plaintiff JANE DOE was trafficked.

135. Scores of news stories from across the United States highlight G6 Defendants', Red Lion's and Wyndham's facilitation of sex trafficking and certainly establish that all Defendants knew, or should have known, of the use of Motel 6, Travelodge, Days Inn, and America's Best Value Inn hotels, including the subject hotels, for sex trafficking.

136. Information that has become public through news stories establishes the entrenched and pervasive nature of Red Lion's, G6 Defendants' and Wyndham's role in providing a venue where sex trafficking has continued unabated for years. Defendants have provided the means necessary for traffickers to traffic victims, including Plaintiff JANE DOE. Among notable press involving the frequent use of hotels for illegal trafficking activity, the following was noted:

a. In late 2003, a trafficker set up a sex trafficking venture at a Motel 6 in

Connecticut in which two (2) young women were sold for sex eight (8) to ten (10) times per day.[20]

b. In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio.[21]

c. In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls for sex.[22]

d. From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[23]

e. Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012, at a Motel 6 in Portland, Oregon.[24]

f. The FBI investigated and arrested several individuals in December 2012, for the victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[25]

g. The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6

---

[20] Amy Fine Collins, Sex Trafficking of Americans: The Girls Next Door, Vanity Fair (May 2011), https://www.vanityfair.com/news/2011/05/human-trafficking-201105

[21] Five Toledoans Indicted On Sex Trafficking Charges, ABC7Chicago.com (Nov. 7, 2010), https://abc7chicago.com/archive/7771888/.

[22] Mark Reiter, Two Toledoans Accused Of Juvenile Sex Trafficking, The Blade (Jun. 1, 2010), https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html

[23] Press Release, U.S. Dept. of Justice, Two Aspiring Rappers Charged With Operating Sex-Trafficking Ring In Chicago And Suburbs (Jan. 15, 2016), https://www.justice.gov/usaondil/file/813771/download.

[24] Press Release, U.S. Dept. of Justice, Tacoma Pimp Sentenced To 25 Years For Sex-Trafficking Two Victims (Nov. 20, 2013), https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sex-trafficking-two-victims.

[25] FBI Investigates Human Trafficking At Madison Hotel, WHNT News 19 (Dec. 7, 2012), https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

in Anaheim, California.[26]

h. Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas.[27]

i. In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6 in Warwick, Rhode Island.[28]

j. Over a fourteen (14) month period ending in approximately April 2015, at the same Motel 6 in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking.[29]

k. Seven (7) people were indicted in January 2016, by a Colorado grand jury for sex trafficking children from 2014 through the summer of 2015, out of hotels in Denver, Colorado, including a Denver area Motel 6.[30]

l. In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl.[31]

m. A married couple was indicted in June 2015, for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington.[32]

---

[26] Suspects Busted in Anaheim Sex Ring, ABC13 Eyewitness News (Dec. 5, 2012), https://abc13.com/archive/8909784.

[27] Lindsay Bramson, Local Teen Saved from Sex Slavery; Two Charged, KXAN Austin (Mar. 6, 2015), https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.

[28] Amanda Milkovits, Massachusetts Man Accused of Trafficking Teen In Warwick Motel, NewportRI.com (Mar. 24, 2015), https://www.newportri.com/article/20150324/NEWS/150329666.

[29] Sarah Kaplan, Crime-Ridden Motel 6 In R.I. Will Hand Over Guest List To Police, The Washington Post (Apr. 28, 2015)https://www.washingpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-hand-over-guest-list-to-police/?utm_term=.a804ce3f32a8.

[30] Hsing Tseng, Seven Indicted by Colorado Grand Jury In Child Sex Trafficking Ring Bust, Fox 31 Denver (Jan. 6, 2016), https://kdvr.com/2016/01/06/7-indicted-by-colorado-grand-jury-in-child-sex-trafficking-ring-bust/.

[31] Andrea Fisher, Woman Caught Up In Human Trafficking Ring Pleads Guilty (Aug. 29, 2016), https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleads-guilty/89566374/.

[32] Diana Hefley, County Investigating 45 Ongoing Human Sex Trafficking Cases, Herald Net (Jun. 26, 2015), https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

n. In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel 6 in June 2015, and a grand jury subsequently charged her assailant with human trafficking and rape.[33]

o. In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a Motel 6 in Pismo Beach, California.[34]

p. In approximately March 2013, sex traffickers began operating a sex trafficking venture out of Motel 6 locations in Bangor and Portland, Maine.[35]

q. Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of the Motel 6 on Caton Avenue in Baltimore, Maryland.[36]

r. In Richmond County, Georgia a man was arrested at a local Motel 6 in October 2013 and charged with sex trafficking of two young women.[37]

s. In Beaumont, Texas, multiple survivors sued after being trafficked in Motel 6 and Studio 6 locations and claimed the hotel staff ignored their cries for help and obvious signs of trafficking.[38]

137. The three Motel 6 locations in SeaTac, Washington have been sued by several child and adult trafficking survivors in the past several years related to facilitating and allowing sex trafficking to take place at their locations. G6 Defendants directly owned and operated two of those Motel 6 locations during the alleged trafficking and directly operated and

---

[33] Tuscaloosa Man Charged With Rape And Trafficking Mississippi Teen, News Mississippi (Nov. 7, 2014), https://newsms.fm/tuscaloosa-man-charged-human-trafficking-mississippi-teen/.

[34] Matt Fountain, Four Accused Of Pimping Out 15-Year-Old Girl In SLO Will Stand Trial, SanLuisObispo.com (May 5, 2016), https://www.sanluisobispo.com/news/local/article75832962.html.

[35] Danielle McLean, What Drives Maine Sex Traffickers' Inhumanity, Bangor Daily News Maine Focus (Sept. 12, 2016), https://bangordailynews.com/2016/09/12/mainefocus/what-drives-maine-sex-traffickers-inhumanity/.

[36] Anne Kramer, Man Faces Prison Time For Sex Trafficking Baltimore Teen, WBAL News Radio (Apr. 10, 2014), https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.

[37] UPDATE: Man Arrested For Sex Trafficking, WRDW.com On Your Side, (Oct. 3, 2013), https://www.wrdw.com/home/headlines/Man-arrested-for-sex-trafficking-226301261.html.

[38] Local Hotels accused of ignoring signs of sex trafficking, Megan Zapalac (July 28, 2023) https://www.beaumontenterprise.com/news/article/provost-umphrey-law-firm-files-lawsuit-federal-18257757.php



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

oversaw the other with direct knowledge that forced commercial sex was occurring there.

138. Wyndham has been named in numerous civil lawsuits arising out of sex trafficking at their properties, including during the trafficking of Plaintiff JANE DOE in this case, which put Wyndham on further notice of what was going on.

139. Ultimately, at least several hundred traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of Red Lion, G6 and Wyndham branded properties owned and/or controlled by G6 Defendants or Wyndham in the recent past before and during the subject time period.

140. In 2011, a Change.org petition was published to address rampant gang-based sex trafficking in Wyndham hotels in California. The petition argued that from 2006 to 2011, members of the Crips gang in San Diego ran child sex trafficking rings of at least sixteen (16) girls out of various area hotels. Two subject properties on which many instances of child sex trafficking took place were a Howard Johnson in Escondido, California, and a Travelodge in San Diego, California, both owned by the Wyndham group.

141. Based on information and belief, before and at the time of the sex trafficking of Plaintiff JANE DOE, Defendants managed and monitored on-line reviews their motel/hotel locations throughout the country that complain about prostitution and facts consistent with sex trafficking at their properties.

142. A sampling of news stories, reviews, and other public information available online establishes that, at the time Plaintiff JANE DOE was trafficked at the subject properties, the Defendants knew or should have known that:

a. there was widespread and ongoing sex trafficking occurring at Motel 6, Red Lion, Travelodge and Days Inn branded properties;

b. sex trafficking was a brand-wide problem for Red Lion, G6 Defendants and Wyndham;



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

c. Franchisees and hotel staff at the subject properties were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking and harboring trafficking at the branded hotel properties, including at and/or nearby the subject properties;

d. Red Lion, G6 Defendants' and Wyndham's efforts, if any, to stop facilitating sex trafficking in their branded properties were not effective; and

e. Red Lion, G6 Defendants and Wyndham and their franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring and allowed to occur.

143. Despite this knowledge and mounting evidence that sex trafficking at its properties was ongoing and growing, Defendants chose to earn revenue by continuing conduct that they knew or should have known would facilitate that trafficking. In fact, growth is the forefront of both Red Lion, G6 and Wyndham's strategy as each continue to launch expansion plans and brag publicly about growth, with and without new parent companies. Defendants failed to take responsibility and accountability for their wrongful actions and inaction in knowingly profiting from sex trafficking ventures around the country, including at the subject hotels where Plaintiff JANE DOE was trafficked. Defendants' failures led to and caused Plaintiff JANE DOE to be trafficked and the horrific injuries and lifelong permanent harm she suffered as a result.

**b. Defendants had actual and constructive knowledge of widespread and ongoing sex trafficking at their subject Motel 6, Travelodge, Days Inn, and America's Best Value Inn locations that each owned and/or controlled.**

144. Defendants were specifically aware that sex trafficking was widespread and ongoing at the subject locations for which they owned and/or controlled at all times relevant.

145. In fact, internet reviews for the subject Motel 6 locations named herein, which G6



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

Defendants have reviewed, read, managed, controlled and monitored, show signs of sex trafficking during and well after Plaintiff JANE DOE was trafficked. For example:

- Motel 6 on 47th Avenue South: Reviewers refer to the property as "Motel Sex," a "red light district," and "a hotbed of prostitutes." One reviewer found used condoms in their room, and another a box of condoms. Several female guests were followed, harassed, chased, threatened, and groped by men on the premises. Guests also state the property has "druggies everywhere" and is "over flowing with tweakers." Some guests did not have working phones in their rooms, or staff failed to answer when guests did attempt to report concerns. If they were able to actually reach a staff member, they "did not care at all," "didn't do anything about it," and offered "no intervention." One guest stated, "The management knowingly allows open drug dealing and prostitution to take place on their property." Another reviewer notes "The place is full of gangbangers, drug dealers, and prostitution. I believe the staff know these activities are going on but do nothing to stop it."
- Motel 6 on Military Road: Guests state the property is "a high prostitution area," "infested" with prostitutes, and where prostitution occurs daily. Several guests observed women screaming, crying, and asking for help. One reviewer witnessed prostitutes in the lobby, and another observed women's underwear on the walkway. The motel is also described as a "drug haven" and "crack city," with "drug dealers constantly roaming around" and "drug addicts everywhere." When guests seek help, staff was "not too concerned," "unhelpful or not present." and "didn't seem to care." One guest experienced the manager flirting and asking her out, even after she asked him to stop. Security is "essentially non-existent," and when guards witness incidents they "just walked right past all that like nothing."



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

- Motel 6 on Pacific Highway: Reviewers describe the motel as a "staging area for prostitutes" with "prostitutes swarming around." The property was "littered with" prostitutes, and pimps were observed in the parking lot. Police officers told female guests to leave the premises because they weren't safe. One guest even found a condom on the floor of their room. Guests also state the motel is "drug infested," a "drug den," and "filled with drug users." One reviewer noted, "The hotel was run by Drug Dealers. It was so rampant that I was scared." It was evident that employees were aware of the illegal activities, as one guest stated, "Drugs. Prostitution. The desk clerks turn a blind eye to it." When guests sought help, staff "didn't really seem to care," "didn't even seem concerned," and "ignored these concerns entirely." Numerous guests observed fighting, screaming, and yelling at all hours. When one reviewer contacted staff to report violence, they refused to contact police. A woman ended up getting shot due to staff's failure to assist.

146. From approximately 2014 through the present, multiple online reviewers of the Americas Inn & Suites property along Aurora Avenue North in Seattle have described observing activity consistent with the well-known commercial sex trade operating along that corridor and red flags of sex trafficking. Reviewers repeatedly reported seeing women approaching vehicles on Aurora Avenue, individuals being dropped off and picked up by cars late at night, and frequent foot and vehicle traffic to and from rooms. Several guests stated that multiple men were observed entering and leaving certain rooms within short periods of time throughout the night, sometimes accompanied by disturbances or arguments around the motel. Other reviewers commented that people knocked on doors late at night apparently searching for rooms where "prostitutes" were staying. Across these reviews, guests commonly described the property as being located in the middle of the Aurora Avenue prostitution corridor and expressed concerns about safety due to the visible



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

presence of street prostitution, crime, drugs, scary people and related activity occurring in and around the motel area.

147. From approximately 2014 through the present, online reviews and traveler comments regarding Travelodge by Wyndham Seattle North of Downtown frequently reference safety concerns and suspicious activity associated with its location along Aurora Avenue North, a corridor widely known for street prostitution and related crime. Reviewers repeatedly described the surrounding area as “sketchy,” reporting visible street disturbances, people loitering around the property, and late-night activity involving vehicles and individuals moving between the motels and the street. Some guests noted being approached with drugs, observing “rough-looking characters,” or hearing arguments and commotion. Others warned that the area around the hotel felt unsafe. These reviews commonly describe frequent nighttime traffic, individuals lingering in the parking area, and visible signs of vice-related activity in the immediate vicinity or around the property.

148. From approximately 2014 through the present, online guest reviews of Days Inn by Wyndham Seattle North of Downtown, located at 9100 Aurora Avenue North, frequently reference safety concerns and suspicious activity associated with its location along the Aurora Avenue corridor. Several reviewers describe the surrounding area as unsafe or “sketchy,” noting visible street activity late at night, loitering individuals, and disturbances around the property. One reviewer warned travelers not to stay in the area because it was associated with “hookers, drugs, street drinking, [and] homeless people” nearby. Others commented that the hotel sits directly on Aurora Avenue and therefore reflects the conditions of that corridor, which some guests perceived as unsafe or uncomfortable, particularly at night. Across these reviews, recurring themes include late-night foot and vehicle traffic to and from the hotel, individuals lingering in the vicinity of the property, and concerns tied to the broader Aurora Avenue environment, which has historically been associated with prostitution, commercial sex and other vice-related

activity.

149. Traffickers, including Plaintiff JANE DOE's traffickers, repeatedly chose to use the subject motel locations for their sex trafficking activity, leniency and facilitation. As such, Defendants knew or should have known about the pervasive sex trafficking at the subject locations based on obvious indicators of this activity and public knowledge, as well as regular online reviews that described it in the context of safety concerns.

150. Police and/or "911" calls for service to the subject Motel 6 locations, Days Inn, Travelodge, and America's Best Value Inn show that guests called for help several times in the years Plaintiff JANE DOE was trafficked related to assault (both simple and aggravated), battery, rape, domestic violence, fighting, drug overdose, prostitution and/or trafficking.

151. Upon information and belief, including online reviews and calls for service, as well as public articles and other lawsuits, there were multiple trafficking victims exploited at the subject Motel 6 locations, Travelodge, Days Inn, and America's Best Value Inn locations named herein prior to and during Plaintiff JANE DOE's trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who are not registered guests in and out of their room at unusual times, noticeable signs of commercial sex activity, men waiting in parking lots for long periods of time throughout the night, arriving with few possessions for extended stays, some women entering not being allowed to enter or go freely, signs of abuse and restraint, signs of commercial sex, money exchanged in parking lots and hallways, police activity, long-term guests, men demanding money form women, physical abuse, drug addiction and drug overdoses, and other signs consistent with the "red flags" of trafficking.

152. Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

restricted movements of these victims, as well as law enforcement investigation and the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subject to violence, coercion, control, and exploitation at the subject properties.

153. All knowledge from the employees, staff, and agents at these subject hotel locations is imputed to all Defendants for their subject properties. Defendants knew, by and through their employees and agents, about this widespread and ongoing commercial sex by force, fraud or coercion, also known as "sex trafficking," and human trafficking at these locations, including the trafficking of Plaintiff JANE DOE through the direct observations of hotel staff, including management-level staff and inspectors sent by the franchisor, brand and/or parent company.

154. Upon information and belief, Defendants knew or should have known about the widespread trafficking at the subject Motel 6 locations, Travelodge, Days Inn, and America's Best Value Inn locations accordingly based on the locations they owned and/or controlled referenced herein, based on the above and below including but not limited to:

a. The employees' and agents' witnessing of, by seeing, hearing and being made aware of obvious signs of trafficking including but not limited to men controlling women; commercial sex; drug use and fights surrounding the commercial sex; soliciting commercial sex throughout the hotel and parking lot; women not allowed to come and go freely without escort; numerous different men entering the same hotel room women were escorted to by other men and coming in and out without staying overnight or showing ID; paying for rooms in cash per night without any or without proper ID; women being escorted to rooms rented by men while looking unhealthy, unhappy and/or injured; drug, restraint, and sex paraphernalia, and women and men coming with no luggage or all of their belongings so as to live there;



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

b. the obligation of hotel staff and hotel management to report suspected criminal activity including sex trafficking to Defendants;

c. the regular monitoring of online reviews;

d. the collection and monitoring of customer surveys and complaints;

e. the regular inspections of the hotel properties;

f. information provided by law enforcement; and

g. other sources of information available to Defendants.

155. Any reasonable hotel owner and operator would have known illegal trafficking was occurring regularly at the subject properties and what to do to stop it. Yet Defendants chose to do nothing and continued to knowingly benefit from renting rooms to Plaintiff JANE DOE's traffickers harboring her to sell her for sex.

**c. Defendants Facilitated Plaintiff JANE DOE Being Trafficked at the subject Motel 6, Days Inn, Travelodge and America's Best Value Inn Subject Locations.**

156. Plaintiff JANE DOE was sexually assaulted, abused, hit, beat, drugged, and forced to have commercial sex for money and things of value consistently from about December of 2017 through about July of 2018 at the subject Motel 6s, Days Inn, Travelodge, and America's Best Value Inn locations.

157. JANE DOE had just graduated high school the spring before and turned eighteen years old. She was young and vulnerable.

158. She was led by men under false pretenses to the subject motels where she was drugged, threatened and pressured into engaging in commercial sex. Traffickers threatened her and her families' lives. She was mentally and emotionally abused and made to believe that if she did not do as they said, she would cause harm to her family. She endured inhumane abuse and threats that were observable to the Defendants' employees through her looking drugged, malnourished, scared, bruised and being accompanied by



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

much older men with tattoos, guns, knives, and other characteristics consistent with gang members. She was always watched, followed and/or escorted.

159. Many times, while being abused in rooms, she would yell or scream loudly, which would result in audible sounds of abuse that employees had to have heard.

160. At each hotel, Plaintiff encountered staff while coming and going. No one stepped up to help her. Staff members did look concerned but did not interfere. It was an abusive nightmare of epic proportion that inflicted tremendous permanent physical and mental injuries to Plaintiff JANE DOE as a result.

161. Plaintiff JANE DOE had a stable upbringing in a middle to upper class family. She lived in a beautiful home in the suburbs of Washington State and both of her parents were attentive and nurturing, despite divorcing when she was younger. She was active socially and excelled in high school - graduating with a high GPA and receiving an acceptance into the University of Washington for her undergraduate education.

162. Newly 18 years old, Plaintiff JANE DOE was excited to venture off into independent living at college with hopes and dreams to one day become a news broadcaster. Unfortunately, the trajectory of her life was upended when she met her traffickers in late 2017. Her traffickers pulled over and started talking to her, enticing her with fun, drugs, flirtation, money and false promises to take care of her. Those promises were broken almost immediately and she was soon forced into engaging in commercial sex multiple times per day while under the abuse, coercion, control and watch of the traffickers.

163. Plaintiff JANE DOE's traffickers trafficked her consistently from the about December 2017 through about April of 2018 with a short break when she escaped in around May 2018, but when she returned to Seattle, she was taken again for a short time before finally escaping for good in about July 2018. Other attempts to escape her futile and did not last.

164. Plaintiff was trafficked the most at the subject Motel 6 locations around the airport.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

She was trafficked multiple times for days at a time regularly along Aurora, including the subject motels: Days Inn, America's Best Value Inn and Travelodge locations described herein.

165. Plaintiff JANE DOE was forced to have commercial sex with multiple men per day. She was overworked to the point of unbearable pain. If she screamed or cried out in pain, they forced drugs on her and then used her addiction to these drugs to control her further. This exploitation of the forced addiction to drugs was a cyclical form of torture from which she could not escape. She was terrified of needles and Defendants would inject her with drugs into her neck.

166. Plaintiff JANE DOE's traffickers would physically beat, hit, and strangle Plaintiff JANE DOE to force compliance. They would throw her around the room and force her to walk in the snow around the properties wearing very little clothing, which was not only physically tortuous, but also humiliating and degrading. They would also control if, and when, she would get basic necessities and importantly, food. If she was fed, they controlled the portion size. Jane Doe lost about 70 or more pounds in the time she was trafficked in about eight months.

167. Plaintiff JANE DOE's traffickers were also repeatedly mentally and emotionally abusive to Plaintiff JANE DOE, saying things like "I know where to find you" or "I know where your family is." They threaten to beat and kill Plaintiff JANE DOE and kill people she cared about if she did not comply. In fact, at one point, her traffickers showed her a picture of her father's house, emphasizing to her that she – and her loved ones – were always being watched and followed. This terrified Plaintiff JANE DOE and she knew she had no choice but to comply with their demands to keep herself and her family alive. She was young and terrified.

168. When Plaintiff JANE DOE was forced to interact with employees or go to the office, employees did not ask if she was okay or offer any help despite the loud beatings or visible



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

injuries or distress. Plaintiff JANE DOE's trafficker was always around, and he made sure that either he or another trafficker was watching Plaintiff JANE DOE at all times. She knew that the employees of the subject hotels named herein were friends with her traffickers and looked out for them while being trafficked at the subject locations because of the way they communicated with the traffickers and their body language.

169. From approximately December 2017 through about July 2018, when Plaintiff JANE DOE was able to fully escape for good, Plaintiff JANE DOE was trafficked for varying lengths of time at the subject Motel 6 locations, Travelodge, America's Best Value Inn, and Days Inn. The latter three properties were mostly between January and April 2018. Her traffickers knew where they could get away with trafficking and had long-standing operations at the subject properties that seemed to have been going on long before they started trafficking Plaintiff at each. The employees at the subject locations always ignored her distress, the abuse, the beatings, her fear, the control her trafficker had over her, the loitering of her trafficker while she was forced to have commercial sex, the exchange of money, the men going in and out, the clear conversations between her trafficker and employees that put them on notice of what he was doing related to trafficking, the violence her trafficker inflicted on her and others, the things cleaning staff saw in the rooms used for commercial sex and trafficking, and the Defendants' employees and agents always protected her trafficker and never offered any help to Plaintiff JANE DOE or other persons being noticeably trafficked.

170. Plaintiff JANE DOE was consistently hit and beat at each of the subject locations regularly by her traffickers, and she watched others be as well, and she had bruises and marks visible to hotel employees and agents that saw her.

171. On several occasions, Plaintiff JANE DOE's trafficker pounded on her hotel door with his fists and yelled profanity and threats.

172. While Plaintiff JANE DOE was trafficked at the subject locations, the buyers would



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

come to the room without showing ID and park in the parking lots without any type of permits. The trafficker would wait outside the room or wait in the car watching the hotel door. The non-guest buyers would come and go and then exchange money in the parking lot or outside of the room with the trafficker and the trafficker would go back into the room.

173. Plaintiff JANE DOE's trafficker had guns at the subject locations while trafficking Plaintiff JANE DOE that should have been visible at times to staff.

174. Plaintiff JANE DOE's trafficker physically harmed Plaintiff JANE DOE, threatened Plaintiff JANE DOE's life and those she cared about, and made several false promises to Plaintiff JANE DOE to lure her to the motels initially and then force her to engage in commercial sex for profit to her traffickers, including the Defendants.

175. Based upon information and belief, the subject Motel 6 locations, Days Inn, Travelodge, and America's Best Value Inn had cameras at all relevant times that would have been able to document and/or record physical violence, threats, loitering, money exchanges, beatings, arguments, foot traffic in and out of the rooms, and other acts consistent with sex trafficking.

176. At all relevant times, the subject Motel 6 locations, Days Inn, America's Best Value Inn, and Travelodge allowed, and sometimes required, cash payments and deposits, and did not require credit cards that matched valid Identification Cards.

177. At all relevant times, Plaintiff does not believe Defendants always required valid Driver's Licenses or other valid photo identification for guests or whoever checked them in.

178. At all relevant times, Defendants did not require people entering the premises to get parking permits. Defendants did not secure its property. Defendants did not provide any and/or adequate security at the times Plaintiff JANE DOE was trafficked. Security guards, especially at the Motel 6s, if any, seemed to be friendly with traffickers and look the other way when they saw obvious signs of her sex trafficking.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

179. At all relevant times, Defendants did not require guest parking permits or check vehicle registrations.

180. At all relevant times, Defendants had security cameras.

181. At all relevant times, Defendants knew that human trafficking, including sex trafficking, was occurring at their properties, including but not limited to their subject properties where Plaintiff JANE DOE was trafficked and the trafficking of Plaintiff JANE DOE, and allowed and knowingly facilitated the trafficking for profit.

**d. Defendants knew Plaintiff JANE DOE was trafficked at their properties.**

182. During the period that Plaintiff JANE DOE was trafficked at the subject locations named herein, there were obvious signs that her traffickers were engaged in sex trafficking: According to County Sheriff's Office records, deputies have been called to the motels several times for area checks and 911 calls. Several of those calls were for prostitution-related crimes.

183. The manager/front desk employees of the subject locations recognized Plaintiff JANE DOE and her traffickers due their repeated and extended stays at the locations so often in the approximately 8 months she was trafficked. In fact, the Defendants' employees and her traffickers had ongoing business relationships with Plaintiff JANE DOE's traffickers, would have conversations about the trafficking, and would put them in specific rooms, usually in the back – away from other guests - and warn them about County Vice stings and other police activity.

184. The subject motels accepted cash from her traffickers for the rooms, and upon information and belief, that was daily for multiple-day stays. JANE DOE saw at the Motel 6, Travelodge, Days Inn, and America's Best Value Inn that her traffickers would use cash at each.

185. Other girls were trafficked at the same subject hotels, and at the same time, as



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

Plaintiff JANE DOE.

186. Defendants' employees observed Plaintiff JANE DOE being abused and witnessed the men coming in and out of the rooms and the exchanges of money with the trafficker.

187. Plaintiff JANE DOE and the other young girls would be dressed in very little clothing, even when it was cold and snowing outside, at each of the subject hotels. They would walk to and from their respective hotel rooms scantily dressed with older men multiple times a day with their trafficker walking or watching nearby in front of employees who made faces but never intervened.

188. Several red flags commonly associated with human trafficking were taking place while Plaintiff JANE DOE was being trafficked in plain sight of Defendants' employees and/or agents.

189. JANE DOE recalls specific instances of screaming from pain at each of the subject locations multiple times such that employees heard and should have heard her. She also was drugged and looked unhappy, unhealthy, bruised and under the influence such that she could not consent at each property on multiple occasions.

190. JANE DOE saw employees and cameras at each, whom witnessed her being under the control of traffickers.

191. There was heavy foot traffic in and out of the Traffickers' rooms where Defendants were harboring Plaintiff JANE DOE involving men who were not hotel guests. Several men, often older in age than the Plaintiff JANE DOE and the other young girls, came in and out of the hotel rooms in a single day. These individuals entered and left at unusual hours and were present at the hotel without showing IDs or needing any permits whatsoever to have their vehicles there. While the Plaintiff JANE DOE was with the buyer, Plaintiff JANE DOE's trafficker would wait in his car in a parking spot facing the room and return to the room to collect the money when the buyer left. This same pattern of traffic in and out of the room happened multiple times per day, not just with respect to



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

Plaintiff JANE DOE's hotel room but other hotel rooms harboring young girls being trafficked.

192. It was visible to hotel employees that were located at front desks and around the property. It was visible to security cameras. A reasonable hotel would have seen these regular "red flag" interactions at their property in plain sight and Defendants should have seen it by and through their employees and agents.

193. There were other obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known "red flags" for trafficking in a hotel, such as condoms, sex paraphernalia, and lingerie.

194. Housekeeping was never allowed in the rooms of the subject hotels that Plaintiff was consistently trafficked in. Plaintiff JANE DOE and her traffickers would stay in the room for days, refusing to allow housekeeping in. They would then request an excessive amount of linens and towels from either the front desk or housekeeping that was walking around the property. When they would leave the hotel to go to a different location, there would have been an excessive amount of used condoms, wrappers, lube and other sex paraphernalia seen by housekeeping, who would see them again days later when they returned. These things were not only visible to but must have been seen by hotel employees entering and cleaning the rooms. Plaintiff recalls seeing the same housekeeping staff at the Motel 6s and upon information and belief, the other locations had the same staff working there for long enough periods of time to have been working on multiple times when she was trafficked there over and over.

195. When forced and coerced into coming and going from the subject hotel properties, Plaintiff JANE DOE looked unhealthy, unhappy and abused. Her trafficker was always watching her and her noticeable scared demeanor and noticeable malnourished and eventual thin appearance was visible to hotel employees that she passed.

196. Based upon information and belief, multiple employees and/or agents at the subject



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

hotel locations named herein, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment with the Defendants.

197. Past employees at the subject Motel 6 locations have confirmed that it was a well-known fact that prostitution and commercial sex was occurring and management continued to ignore the signs of sex trafficking.

198. A former front desk agent at Motel 6 on Military Road at relevant times declared that the security guard used to solicit sex for rooms from the girls. She declared that she saw signs of commercial sex and even sex trafficking while there. She described the condoms and drug paraphernalia found in rooms all the time there.

199. A former night auditor and front desk person at Motel 6 on Military Road at relevant times declared that saw people doing drugs in the bushes and cars; she saw prostitutes and people having sex in their cars; she did not feel safe at night alone; the hotel had cameras, but people must've known about the blind spots because that's where she'd find them; it was typical to see prostitution and commercial sex; and she saw girls come in with older men and dressed provocatively. She declared that the girls with older men did not talk or make eye contact. She declared there was no on-site security. It was a heavy drug area. She was never trained on how to spot trafficking or prostitution. No policies or procedures were in place if they did spot trafficking.

200. A former relief general manager at Motel 6 on Military Road at relevant times declared that he often discovered used condoms, pornography, and sex paraphernalia. They came across a lot of drugs and paraphernalia too. There were cameras, but very few in the parking lot. There was no on-site security, but it was needed. They would see women who looked like hookers, and maybe 10 men going in and out of their room. They were wearing revealing clothing, appeared to be on drugs, and had injuries and scars. He would see men who looked like pimps or traffickers and women who looked like trafficking





SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

victims. He saw women who looked like they did not want to be there, and it was obvious they were there against their will. They appeared to be on drugs and being controlled by the men. He received training about how to spot human trafficking but did not learn how to prevent or stop it. He said corporate did nothing about what they were reporting. He declared they would never take any steps to improve conditions at the motel to deter any of these situations from recurring. He even claimed his boss' hands were tied because he did not have the support of corporate. He declared that Motel 6's corporate (G6 Defendants) expected them to ignore what was happening and "play stupid."

201. As such, Defendants knew or were willfully blind to the fact that Plaintiff JANE DOE was being trafficked at their subject properties. Defendants knew or should have known they were benefiting from their participation in the trafficking of Jane Doe.

202. Given these obvious signs, Defendants knew or should have known about the trafficking and harboring of Plaintiff JANE DOE based on their policies and/or protocols that required hotel staff to report all suspected criminal activity including trafficking and sex trafficking. They also would have known based on their policies related to inspections of the property.

203. At all times relevant, upon information and belief, Wyndham's management employees inspected and audited the Travelodge and Days Inn properties and saw signs of sex trafficking when Plaintiff was being trafficked there and should have seen signs of her trafficking.

204. At all times relevant, upon information and belief, Wyndham was reviewing online reviews for the subject Travelodge and Days Inn and knew or should have known that sex trafficking was prevalent there based on the reviews noting red flags of the same.

205. At all times relevant, upon information and belief, Red Lion's management employees inspected and audited the America's Best Value Inn properties and saw signs of sex trafficking when Plaintiff was being trafficked there and should have seen signs of



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

her trafficking.

206. At all times relevant, upon information and belief, Red Lion was reviewing online reviews for the subject America's Best Value inn and knew or should have known that sex trafficking was prevalent there based on the reviews noting red flags of the same.

**Defendants facilitated the trafficking of Plaintiff JANE DOE**

207. Defendants had both actual and constructive knowledge of the trafficking of Plaintiff JANE DOE at their subject hotel locations they owned and/or operated because the trafficking was the direct result of Defendants', by and through their employees and agents', facilitating her trafficking at the subject locations.

208. The Brand Defendants—G6 Defendants, Wyndham and Red Lion— are responsible for the acts, omissions, and knowledge of all employees of the subject hotels that each contracted with and controlled when operating the hotel because these acts and omissions were committed in the course and scope of employment and/or agency with Defendants. Defendants ratified these acts and omissions because Defendants failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known and reported to Defendants of sex trafficking occurring at the subject hotels before and during trafficking of Plaintiff for sex at each.

209. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject locations, Defendants continued renting rooms to these traffickers, including the rooms used to sexually exploit victims, including Plaintiff JANE DOE.

210. Defendants knew and should have known that Plaintiff JANE DOE was being trafficked and, despite this, benefited from continued association with her non-hotel-employee traffickers by providing them a venue in the form of hotel rooms and related services, and making exceptions for them in contrast to their own policies and procedures, to harbor and facilitate Plaintiff JANE DOE's sexual exploitation.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

211. Defendants also facilitated widespread trafficking at their subject locations, including the trafficking of Plaintiff JANE DOE in ways including:

a. allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

b. inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

c. choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, laws, and/or applicable franchisor policies and procedures; and

d. implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

212. Upon information and belief, during the times Plaintiff JANE DOE was trafficked at the subject properties, Red Lion, G6 Defendants and Wyndham participated directly in aspects of the operation of those subject hotel locations, respectively, that influenced whether and to what extent trafficking occurred at the hotels, including but not limited to the trafficking of Plaintiff JANE DOE as follows:

a. G6 publicly assumed responsibility and control over the human trafficking response of all Motel 6 properties, including design and implementation of practices to prevent trafficking, safety and security procedures, employee, and franchisee education, training, and response, partnership with external organizations, and advocacy;

b. G6 retained control over when its branded hotels would share information with law enforcement and when law enforcement would be contacted about

suspected criminal activity in G6 branded hotels;

c. G6 retained control over the response to trafficking by creating a reporting hotline for hotel staff and franchisees to report suspected human trafficking to the G6.

d. G6 determined when issues should be escalated to the National Human Trafficking Hotline or law enforcement;

e. G6 retained control over determining which hotels needed additional training or other resources based on a high risk of human trafficking and other related criminal activity;

f. G6 expressly retained control to terminate hotel staff and/or a franchising agreement based on the response to human trafficking;

g. G6 retained control, at the brand-wide level, over training on how to spot the signs of and help prevent human trafficking.

h. G6 determined whether the training is provided, when it is provided, the content of the training, how the training is delivered, who receives the training, and the consequences if someone does not participate in the training or fails to follow such training;

i. G6 acknowledge that they retain control to adopt requirements for franchised hotels specifically designed to prevent human trafficking and other criminal activity;

j. G6 maintains a Safety & Security Team and a Critical Incident Rapid Response Team that are charged with investigating and responding to potential criminal incidents at all Motel 6 properties, including suspected trafficking incidents;

k. G6 is responsible for adopting, enforcing, and monitoring policies and codes of conduct related to human trafficking at the subject Motel 6 locations;



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

l. G6 maintained control over all details of the terms under which franchised hotels, including the subject Motel 6 locations, offered internet services to customers, including dictating the software, hardware, and service provider to be used, setting all policies about use and restrictions on use, and actively collecting and monitoring guest internet usage data.

m. G6 dictated whether sites frequently used to solicit clients for sex trafficking victims would be accessible through the internet at the subject Motel 6 locations;

n. G6 retained control over the setting, supervision, overseeing, and enforcement of detailed policies and protocol for housekeeping services at the subject Motel 6 locations, including policies for how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services; and

o. G6 collected, maintained, and analyzed detailed data regarding housekeeping services at the subject Motel 6 locations, including trends that would reveal patterns consistent with human trafficking.

p. G6 retained control over determining which hotels needed additional training or other resources based on a high risk of human trafficking and other related criminal activity;

q. Wyndham expressly retained control to terminate hotel staff and/or a franchising agreement based on the response to crime and overall criminal conditions including human trafficking;

r. Wyndham retained control, at the brand-wide level, over training of franchisees and all employees running its branded properties on how to spot the signs of and help prevent human trafficking.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

s. Wyndham determined whether the training is provided to its employees, when it is provided, the content of the training, how the training is delivered, who receives the training, and the consequences if someone does not participate in the training or fails to follow such training;

t. Wyndham acknowledges that they retain control to adopt requirements for franchised hotels specifically designed to prevent unsafe premises including human trafficking and other criminal activity;

u. Wyndham represents publicly that it has a team of people working on social issues, including human trafficking, to prevent it at its properties;

v. Red Lion maintained control over the hiring, staffing levels, security budgets, security staff, and response to safety concerns including crime;

w. Red Lion maintained control over data and data analysis;

x. Red lion retained control over employee trainings, including related to sex trafficking and the identification and prevention thereof;

y. Red Lion retained control over staff responsibilities, and policies and procedures related to safety.

213. At the times Plaintiff JANE DOE was trafficked and since, G6 Defendants, Red Lion and Wyndham directly participated in and retained day-to-day control over renting rooms at the subject hotel locations by, among other things:

a. controlling all details of the guest reservation, check-in, and payment processes through management and control over all systems used for those processes and adoption of detailed and specific policies governing the means and methods used for each of these processes, along with website control;

b. directly making reservations for rooms at the subject locations and accepted payment for those rooms through a central reservation system that they





SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

controlled and operated. They could reserve rooms and accept payments without requiring franchisee approval or involvement;

c. establishing and maintaining control over brand-wide "do not rent" or similar systems. They each set all policies related to use of these types of systems and dictated the day-to-day details of reservations at the subject locations through detailed policies that they established regarding use of their systems;

d. They controlled room rates, required discounts, mandatory fees, and rewards programs;

e. They controlled and restricted the ability of franchisees and staff to refuse or cancel a reservation;

f. They controlled and oversaw policies and procedures regarding check-in, payment, and identity verification procedures;

g. They had the authority to and could have required certain forms of identification and payment, age verification for guests and/or guardian documentation, along with permits for parking and vehicle registration verification.

h. They had the authority to and could have required certain security and safety measures be followed at all times.

i. They collected, retained, monitored, and analyzed detailed data about every guest who stayed at the subject locations for each of their branded properties;

j. They established detailed policies and protocol that dictated, step-by-step, everything that would happen from the time a guest arrived at the subject locations until they entered their guest room. This included operational directives regarding payment methods, identification requirements, the number of guests that could be in each room and whether information needed



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

to be collected for each guest, what questions hotel staff should and should not ask, and other matters related to check-in; and

k. They each required franchisees to use their property management system, which was owned, maintained, controlled, and operated by the parent brand company for virtually all aspects of hotel operations regarding room reservations and payment.

214. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject locations named herein, parent brand company Defendants continued renting rooms to traffickers, including the rooms used to sexually exploit victims, including Plaintiff JANE DOE.

215. Red Lion, G6 Defendants and Wyndham knew or should have known that Plaintiff JANE DOE was being trafficked and, despite this, benefited from continued association with the other Defendants associated with each of their branded motels and/or her traffickers by providing them hotel rooms and related services to facilitate Plaintiff JANE DOE's sexual exploitation.

216. Upon information and belief, at all times relevant, despite having actual or constructive knowledge of the ongoing sex trafficking at the subject locations, G6 Defendants, Red Lion, and Wyndham continued participating in a venture at these hotels, with the other associated Defendants and the hotel staff, in a way that it knew or should have known would lead to additional sex trafficking at the hotels, including but not limited to by the following:

a. adopted inappropriate and inadequate practices for selecting, training, supervising, managing, and disciplining franchisees and hotel staff regarding issues related to human trafficking;

b. provided inadequate training on issues related to human trafficking and unreasonably delayed providing training;





SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

c. adopted a safety and security budget and safety and security practices that were clearly insufficient considering the known problem of sex trafficking at its branded properties;

d. implicitly approved decisions by franchisees and hotel staff not to report or respond to criminal activity including sex trafficking appropriately;

e. continued to use policies, protocols, and practices that had been shown to lead to widespread trafficking at the subject locations;

f. attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal;

g. despite having specific knowledge of policies that would significantly reduce sex trafficking at its branded locations including the subject locations, G6 Defendants and Wyndham declined to implement policies that would likely have the effect of reducing its sex-trafficking related profits or that would require publicly acknowledging the ongoing problem of sex trafficking at its properties;

h. G6, Red Lion and Wyndham willfully delayed taking obvious and apparent steps to stop facilitating sex trafficking, which they had the ability and responsibility to take sooner, and instead focused on trying to create contracts that would limit their liability while still maintaining control.

i. G6, Red Lion, and Wyndham allowed traffickers to reserve rooms using cash, which provided relative anonymity and non-traceability; and

j. G6, Red Lion, and Wyndham provided traffickers with access to internet services in a manner that G6 knew or should have known would be used to facilitate trafficking by promoting commercial sex services online.

217. If G6 Defendants, Red Lion and Wyndham had exercised reasonable diligence when operating their properties and, in the areas, where it retained control, G6 and Wyndham





SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

would have prevented the subject locations from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Plaintiff.

218. Instead, G6 Defendants, Red Lion and Wyndham engaged in the course of conduct that affirmatively ratified and facilitated widespread and ongoing sex trafficking, including the trafficking of Plaintiff JANE DOE.

219. Through the conduct described above, G6 Defendants, Red Lion and Wyndham knowingly benefited from engaging in a venture at the subject locations named herein, as follows:

a. including increased revenue, every time a room was rented at any subject location they owned or controlled as described herein;
b. continuing to rent rooms to Plaintiff JANE DOE's non-employee traffickers despite having actual and constructive knowledge of their sex trafficking activity;
c. maintaining a mutually beneficial relationship with the traffickers at the subject locations, fueled by sexual exploitation of victims, including Plaintiff JANE DOE;
d. sex traffickers, including Plaintiff JANE DOE's traffickers, frequently used the subject locations for their trafficking because of an implicit understanding that the locations were an avenue that would facilitate their trafficking, providing minimal interference and lowering their risk of detection. This understanding occurred because of the conduct of Defendants in facilitating that trafficking as described throughout this Complaint. This resulted in benefits, including increased and consistent revenue, for Defendants;
e. Defendants participated in this venture through the conduct described herein as they were jointly responsible for relevant aspects of hotel operations.



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

220. Plaintiff JANE DOE's trafficking at the subject hotel locations was a result of Defendants' participation in a venture with each other and criminal traffickers. If Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Plaintiff JANE DOE's trafficking at the subject locations.

221. Defendants also knowingly benefited from engaging in a commercial venture with each other Defendant operating the subject respective locations.

222. This venture violated 18 U.S.C. §§ 1591(a) and 1595(a) through the conduct of hotel staff and the widespread sex trafficking at the subject hotels and motels.

223. Despite its actual or constructive knowledge that the venture was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), G6 participated in the venture by continuing to associate with the hotel staff and with other Defendants to operate the subject locations named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. §1591(a), including trafficking of victims like Plaintiff JANE DOE.

**The Franchisees Named Herein Acted as Actual Agents of their Parent Brands, Wyndham, Red Lion and G6 Defendants.**

224. G6 Defendants, Red Lion and Wyndham are vicariously liable for the acts, omissions, and knowledge of its employees and selves, as well as their franchisees named herein, and their staff, employees and agents at the subject locations named herein that each is alleged to have owned and/or controlled, which are their actual agents or subagents.

225. G6 Defendants subjected SeaTac Hotels, LLC to detailed standards and requirements regarding the operation of the Motel 6 on 47th Ave. named herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by the G6 Defendants.

226. Wyndham subjected Jagdev Singh & Sons, Inc. and Hauser Investments LLC to

detailed standards and requirements regarding the operation of the Days Inn and Travelodge locations, respectively, named herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by Wyndham.

227. Red Lion subjected Gold Investment, LLC to detailed standards and requirements regarding the operation of the America's Best Value Inn location named herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by Wyndham.

228. G6 Defendants, Red Lion and Wyndham obscure the full extent of control they exercise over the franchisees by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals. Upon information and belief, the standards that G6 Defendants, Red Lion and Wyndham imposed on their franchisees includes but is not limited to:

a. did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools Defendants used at the subject locations;
b. covered virtually all aspects of hotel operations, including internal operating functions;
c. dictated the specific manner in which Defendants and hotel staff must carry out most day-to-day functions at the subject locations; and
d. significantly exceeded what was necessary for Defendants to protect its registered trademarks.

229. In addition to the ways described above, upon information and belief, at all times relevant, G6 Defendants, Red Lion and Wyndham exercised and reserved the right to exercise systemic and pervasive control over Franchisee Defendants' day-to-day operations



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

of the subject motel locations named herein, including the following ways:

a. required franchisees and management of franchised hotels to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for it to protect their registered trademarks;

b. provided training for hotel management and select hotel staff;

c. required all hotel staff to participate in training it created through an online learning platform and/or chosen curriculum it controlled and maintained;

d. controlled training provided by franchisees to hotel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e. retained sole discretion to determine whether all training had been completed satisfactorily;

f. for certain products and services that franchisees were required to purchase to operate the subject locations named herein, G6 and Wyndham designated approved vendors and prohibited franchisees from purchasing goods and services from anyone other than an approved vendor;

g. required franchisees to sign a technology agreement governing the terms under which franchisees must procure and use technical services and software while operating the subject locations named herein. Franchisees were required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the hotel;

h. set required staffing levels and/or standards for the locations named herein;

i. established detailed job descriptions for all positions in its properties and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

j. set requirements for the hiring process used by franchisees and oversaw employee discipline processes;

k. provided benefits for employees of franchised hotels;

l. required franchisees of the subject properties to use a customer resource management program maintained and operated by the parent company;

m. controlled channels for guests to report complaints or provide feedback regarding the subject locations and directly participated in the response and/or supervised the response to customer complaints or other feedback.

n. retained the right to provide refunds or other compensation to guests and to require franchisees to pay associated costs;

n. generated reports and analysis of guest complaints and online reviews for the subject motel locations;

o. required franchisee Defendants to use a Guest Relations Application and/or something similar owned, operated, and maintained by G6/Wyndham/Red Lion, as applicable, to manage all guest data and information. The brand parent companies could use the backend of this system to analyze data and generate reports and did so;

p. set detailed requirements for insurance that franchisees must purchase and retain the right to purchase insurance for franchisees and to bill franchisees directly for that insurance if it determined that the franchisees have not purchased adequate insurance;

q. regularly audited the books and records of franchisee Defendants;

r. conducted frequent and unscheduled inspections of the subject properties;



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

s. retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of the franchising agreements if franchisees violated any of its detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the subject locations named herein;

t. controlled all marketing for subject locations and prohibited franchisees from maintaining any online presence unless specifically reviewed and approved by corporate;

u. imposed detailed recordkeeping and reporting requirements on franchisee defendants regarding virtually all aspects of hotel operations;

v. supervised and controlled day-to-day operations of the subject locations named herein through detailed information and extensive reports that it obtained through the property management system and other software systems it required Defendants to use; and

w. retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

**<u>G6 Defendants are jointly responsible for the trafficking of Plaintiff JANE DOE.</u>**

230. G6 Defendants were participants in a joint venture with each other, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

231. Upon information and belief, operation of the subject Motel 6 locations was part of a single unified operation by G6 Defendants. Upon information and belief, G6 Defendants shared a common parent company, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos. Upon information and belief, G6 Defendants



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

acted jointly to own, operate, control, manage, and supervise the subject Motel 6 locations. As an integrated enterprise and/or joint venture, Defendants were separately and jointly responsible for compliance with all applicable laws.

**Red Lion and Gold Investment LLC Are jointly responsible for the trafficking of Plaintiff JANE DOE.**

232. Red Lion and Gold Investment, LLC were participants in a joint venture with each other, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

233. Upon information and belief, operation of the subject America's Best Value Inn location was part of a single unified operation by Red Lion and Gold Investment. Upon information and belief, they were subject to joint control, and operated as an integrated enterprise and/or as alter-egos. Upon information and belief, they acted jointly to own, operate, control, manage, and supervise the subject America's Best Value Inn. As an integrated enterprise and/or joint venture, Defendants were separately and jointly responsible for compliance with all applicable laws.

**Wyndham is jointly responsible for the trafficking of Plaintiff JANE DOE with Jagdev Singh & Sons, Inc. and Hauser Investments, LLC.**

234. Wyndham and its franchisee Defendants were participants in a joint venture with each other, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

235. Upon information and belief, operation of the subject Travelodge and Days Inn was part of a single unified operation by Wyndham and each of its franchisees. Upon information and belief, they operated as an integrated enterprise and/or as alter-egos. Upon information and belief, Wyndham with each of its franchisees, acted jointly to own,



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

operate, control, manage, and supervise the subject Wyndham locations. As an integrated enterprise and/or joint venture, Defendants were separately and jointly responsible for compliance with all applicable laws.

**Defendants are Jointly and Severally Liable for Plaintiff's Damages.**

236. The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Plaintiff JANE DOE.

237. Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Plaintiff JANE DOE for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

**CAUSE OF ACTION AGAINST ALL DEFENDANTS**

**Sex Trafficking under 18 U.S.C. § 1595**

1. **Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (all Defendants)**

238. Plaintiff JANE DOE realleges and incorporates the allegations in paragraphs 1 through 237.

239. Plaintiff JANE DOE is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

240. Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

a. violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, it harbored individuals, including Plaintiff JANE DOE, knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property; and

b. violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel properties.

241. Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff JANE DOE to suffer substantial physical and psychological injuries and other damages as a direct and proximate result of being trafficked and sexually exploited at the Defendants' hotel properties.

**2. Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants).**

242. Plaintiff JANE DOE realleges and incorporates the allegations in Paragraphs 1 through 237, and 238 through 241.

243. Plaintiff JANE DOE is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

244. Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and traffickers, including Plaintiff JANE DOE's traffickers, despite the fact that each defendant knew or should have known that these traffickers were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties, including the subject Motel 6s, Travelodge, Days Inn and America's Best Value Inn locations alleged in this Complaint. As more specifically alleged above, Defendants took part in common undertakings and enterprises involving risk and potential profits, and here, actual profits resulted. Defendants' employees and agents had a direct association with the hotel employee traffickers and the non-hotel-employee traffickers, and knowingly facilitated the traffickers, which, as shown more thoroughly in the incorporated allegations above,



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

showed a continuous business relationship between the traffickers and Defendants such that the pattern of conduct appears to be a tacit agreement between them. Thus, Defendants are liable as a beneficiary under 18 U.S.C §1595(a).

245. Through the acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and/or the non-employee traffickers regarding the operations of its respective hotel properties even though each knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

246. Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff JANE DOE to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

**3. Cause of Action: Vicarious Liability for TVPRA Violations (G6 Defendants, Red Lion, and Wyndham).**

247. Plaintiff JANE DOE realleges and incorporates the allegations in Paragraphs 1 through 237, and 238 through 241, and 242 through 246.

248. Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

249. Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

250. Motel 6 Location Defendants acted as the actual agents of G6 Defendants when operating its respective hotel property and in committing the wrongful acts and inactions alleged herein.

251. Hauser Investments LLC defendants and Jagdev Singh & Sons, Inc. acted as the actual agents of Wyndham Defendants when operating its respective hotel property and in committing the wrongful acts and inactions alleged herein.

252. Gold Investment, LLC acted as the actual agents of Red Lion when operating its respective hotel property and in committing the wrongful acts and inactions alleged herein.

253. Through the wrongful acts and omissions described throughout this Complaint, G6 Defendants, Red Lion and Wyndham exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisees to operate its respective hotel properties.

254. G6 Defendants, Red Lion and Wyndham are vicariously liable for the TVPRA violations of its franchisees, and the subagents of such franchisees.

255. Additionally, on information and belief, each of the G6 Defendants participated in a joint venture operating the subject Motel 6 locations. They had highly integrated operations at the motel, shared revenue and profits generated from the motel, and exercised mutual control over the venture at the motel. They functioned as a single integrated entity and/or as alter-egos of one another and are therefore each directly and proximately liable for the harms and damages caused to Plaintiff JANE DOE as a result.

**JOINT AND SEVERAL LIABILITY**

256. "Joint and several liability 'applies when there has been a judgment against multiple defendants.'"[39] If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff JANE DOE recover only once for the full amount.[40]

257. Federal law allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, without regard to his proportion of fault and even if the concurrent negligence

---

[39] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994).

[40] See 735 ILCS 5/2-1117; see Restatement (Second) of Torts § 875 (1977); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

of others contributed to the incident.[41]

258. Plaintiff JANE DOE alleges Defendants, and each of them, should be held jointly and severally liable to her for the totality of her injuries and damages alleged herein.

**DAMAGES**

259. Defendants' wrongful acts and omissions described above, individually and collectively, proximately and legally caused Plaintiff JANE DOE to sustain legal damages.

260. Plaintiff JANE DOE did suffer the following injuries as a direct and proximate result of Defendants', and each of their, wrongful actions and inactions alleged herein, and as such Plaintiff JANE DOE is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages, see, e.g., 18 U.S.C. §§ 1593, 1595, including:

a. actual damages;
b. direct damages;
c. incidental and consequential damages;
d. lost earnings and lost earning capacity;
e. necessary medical expenses;
f. life care expenses;
g. physical pain and suffering;
h. physical impairment;
i. mental anguish and emotional distress damages (until trial and in the future);
j. restitution;
k. unjust enrichment; and
l. disgorgement of profits.

[41] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (citations omitted); *Manganiello v. City of New York*, No. 07 Civ. 3644, 2008 WL 2358922 (S.D.N.Y. June 10, 2008), affirmed, 612 F.3d 149 (2nd Cir. 2010).



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

m. Plaintiff JANE DOE is entitled to pre- and post-judgment interest at the maximum legal rates.

**Punitive Damages**

261. Plaintiff JANE DOE is entitled to punitive damages under the applicable statutes against Defendants, and each of them, for each and every cause of action alleged herein, as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Plaintiff JANE DOE's claims. See *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

**Attorney Fees**

262. Plaintiff JANE DOE is entitled to recover her costs and reasonable, necessary, or customary attorneys' fees from Defendants under the applicable statutes. See 18 U.S.C. § 1595(a).

263. All conditions precedent to Plaintiff JANE DOE's recovery of its costs and attorneys' fees have occurred or will occur prior to entry of judgment in this suit.

**Jury Demand**

264. Plaintiff JANE DOE requests a jury trial in this action.

**Prayer**

265. For these reasons, Plaintiff JANE DOE prays that this case be set for trial before a jury, and that upon a final hearing of the cause, judgment be entered for Plaintiff JANE DOE against Defendants jointly and severally, for:

a. all economic damages to which she is entitled;
b. all actual damages to which she is entitled;
c. all incidental and consequential damages to which she is entitled;
d. all mental anguish and emotional distress damages to which she is entitled;
e. all restitution damages to which she is entitled;
f. all disgorgement of profits to which she is entitled;



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809

g. all unjust enrichment damages to which she is entitled;

h. exemplary, treble, and/or punitive damages;

i. attorneys' fees and costs of suit;

j. pre-judgment and post-judgment interest at the highest rate allowed by law; and

k. all other relief to which she is entitled in law or in equity.

SINGLETON SCHREIBER, LLP

Dated: March 11, 2026 By: /s/ Alexandria Drake

Alexandria Drake (WA 45188)
Meagan Verschueren (CA 31311) *Pro Hac Vice applicant*
Katie Llamas (CA 303983) *Pro Hac Vice applicant*
Attorneys for Plaintiff



SINGLETON SCHREIBER
450 ALASKAN WAY SOUTH, STE. 200
SEATTLE, WA 98104
(206) 466-0809