UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JANE DOE,
Plaintiff,

v.

G6 HOSPITALITY, L.L.C., et al.,
Defendants.

CASE NO. 2:26-cv-00836-TL

ORDER ON MOTION TO PROCEED UNDER PSEUDONYM

This matter is before the Court on Plaintiff Jane Doe's Motion to Proceed Under Pseudonym. Dkt. No. 86. Having reviewed the motion, responses from Defendant Wyndham Hotels & Resorts Incorporated ("WHR") (Dkt. No. 87); Defendants G6 Hospitality LLC, G6 Hospitality Property LLC, G6 Hospitality Franchising LLC, and Motel 6 Operating L.P. (collectively, "G6 Defendants") (Dkt. No. 93); Defendant SeaTac Hotels, LLC (Dkt. No. 96); Defendant Red Lion Hotels Corporation ("Red Lion") (Dkt. No. 97); Plaintiff's replies (Dkt. Nos. 99, 100) and the relevant record, the Court GRANTS IN PART and DENIES IN PART the motion.

## I. BACKGROUND

Plaintiff is a survivor of sex trafficking. Dkt. No. 106 (Amended Complaint) ¶ 9. From December 2017 through July 2018, Plaintiff was harbored, abused, and forced to engage in commercial sex acts by her traffickers. *Id*. ¶¶ 9, 163. Defendants are companies that owned and operated the hotels where Plaintiff was allegedly trafficked. *Id*. ¶ 8. On March 11, 2026, Plaintiff filed the instant action, pleading the following claims: (1) Perpetrator liability under 18 U.S.C § 1595(a) against all Defendants; (2) beneficiary liability under 18 U.S.C § 1595(a) against all Defendants; and vicarious liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") against the G6 Defendants, Defendant Red Lion, and Defendant WHR. Dkt. No. 1 ¶¶ 238–255. On September 16, 2026, Plaintiff filed an amended complaint bringing the same claims. Dkt. No. 106 ¶¶ 238–255.[1] Plaintiff brings the instant motion, which is fully briefed and ripe for the Court's review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) instructs that the title of a complaint "must name all the parties." Fed. R. Civ. P. 10(a). "The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). A party's use of fictitious names "runs afoul of the public's common law right of access to judicial proceedings." *Does I through XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).

However, the Ninth Circuit allows parties to use pseudonyms under special circumstances, where nondisclosure of the party's identity is necessary "to protect a person from

[1] Plaintiff voluntarily dismissed Defendant Jagdev Singh & Sons, Inc. and now brings claims against Defendant Baikal Investment, LLC. *See* Dkt. Nos. 104 (Joint Motion for Leave to File Amended Complaint and Voluntarily Dismiss Defendant), 105 (Order on Joint Motion for Leave to File Amended Complaint and Voluntarily Dismiss Defendant).

harassment, injury, ridicule or personal embarrassment." *Id.* at 1067–68 (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). Where the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity, a party may preserve his or her anonymity in judicial proceedings. *Id.* at 1068. Applying this balancing test, courts have permitted plaintiffs to use pseudonyms in three situations: "(1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct[.]" *Id.* (citation modified).

To determine the need for anonymity, courts must balance five factors: "'(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, . . . (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest." *Kamehameha Schs*, 596 F.3d at 1042 (quoting *Advanced Textile*, 214 F.3d at 1068). These are often referred to as "the *Advanced Textile* factors." *See id.* at 1042, 1043.

## III. Discussion

Plaintiff asks the Court to allow her to proceed under a pseudonym "to protect her life and safety, as well as to protect [her] from public humiliation and shame related to sensitive, intimate and personal harms from which this case arises." Dkt. No. 86 at 2. Defendant WHR does not oppose Plaintiff's motion for "pre-trial filings" as long as "any order permitting Plaintiff to proceed anonymously does not prejudice WHR's ability to obtain Plaintiff's identity, fully investigate Plaintiff's claims and defend the action, use Plaintiff's identity during trial absent further order, or seek leave to modify any order permitting Plaintiff to proceed under pseudonym for good cause." Dkt. No. 87 at 2. Defendant Red Lion Hotels joined Defendant WHR's

response to Plaintiff's motion. Dkt. No. 97 at 1. The G6 Defendants also do not oppose the motion "for pretrial purposes, provided appropriate protections are implemented to allow the G6 Defendants to meaningfully investigate, assess, and defend against Plaintiff's claims." Dkt. No. 93 at 2. Defendant SeaTac Hotels opposes Plaintiff's motion, arguing that Plaintiff has "not carried" her burden of "demonstrating that disclosure of her identity presently creates an objectively reasonable risk of severe harm sufficient to outweigh the public's interest in open judicial proceedings and the resulting prejudice to the opposing party." Dkt. No. 96 at 1–2. The Court will first analyze whether Plaintiff should be allowed to proceed under a pseudonym during the pre-trial phase. Then the Court will briefly address Plaintiff's request to proceed under a pseudonym at trial.

**A. Proceeding Under Pseudonym Pre-trial**

The Court will now discuss the *Advanced Textile* factors as they apply to the pre-trial phase of the case.

**1. Severity of the Threatened Harm and Reasonableness of Fears**

The two most important *Advanced Textile* factors are the first two—severity of the threatened harm and the reasonableness of the plaintiff's fears. *Kamehameha Schs*, 596 F.3d at 1043. As these two *Advanced Textile* factors are intricately related, they are addressed together. *Id.*

The threatened harm present is undoubtedly severe, and Plaintiff's fear is reasonable. Defendant SeaTac Hotels argues that Plaintiff has not met her burden of showing severity of the threatened harm because she relies on "unsupported allegations" without providing evidence. Dkt. No. 96 at 2. But this misinterprets what Plaintiff is required to show, as the "plaintiff[] [is] not required to prove that the defendants intend to carry out the threatened retaliation. What is relevant is that [the] plaintiff[] w[as] threatened, and that a reasonable person would believe that

the threat might actually be carried out." *Advanced Textile*, 214 F.3d at 1071. As to the reasonableness of Plaintiff's fear, Defendant SeaTac Hotels argues that Plaintiff has not made a showing her fear is reasonable because she fails to: (1) show that she is subject to any ongoing control from her traffickers; (2) show that she has faced any recent threats from her traffickers; and (3) provide any evidence the traffickers know this lawsuit exists. *See* Dkt. No. 96 at 4. Defendant SeaTac Hotel's arguments regarding severity of the threatened harm and reasonableness of Plaintiff's fear are unavailing.

Here, Plaintiff asserts that continuously over approximately eight months between December 2017 and July 2018, she was "sexually assaulted, abused, hit, beat, drugged, and forced to have commercial sex for money and things of value." Dkt. No. 86 at 2. She was strangled by her traffickers and continually threatened with violence—threats that the traffickers followed through with—in order to force Plaintiff into commercial sex. *Id*. at 2–3. Moreover, Plaintiff states that she was constantly followed and watched by her traffickers, and when she went away to college, the "traffickers threatened her and her families' lives," which led her "to believe that if she did not do as they said, they would cause harm to her family." *Id*. Plaintiff's amended complaint also outlines that although she briefly escaped her traffickers in April 2018, she was taken back under their control when she returned to Seattle in May 2018 and forced back into being sex trafficked. *See* Dkt. No. 106 ¶ 163.

For their part, Defendant SeaTac Hotels provides no authority that states that the party moving for anonymity is *required* to be under such threats and control at the time of the motion, instead simply citing examples where that was the case. *See* Dkt. No. 96 at 3. Courts in this District, including this Court, have found that threats such as those described by Plaintiff are severe, and that such fears are reasonable, even when the plaintiff was no longer under the immediate control of their traffickers. *See, e.g.*, *Doe v. G6 Hospitality, LLC*, No. C25-358, 2025

WL 3469870, at *1 (W.D. Wash. Dec. 3, 2025) (finding threatened harm severe and plaintiff's fears reasonable where trafficking, physical abuse, and threats from traffickers had occurred in the past); *Doe v. Salesforce*, No. C24-435, 2024 WL 4371554, at *1, 2 (W.D. Wash. Oct. 2, 2024) (finding threatened harm severe and plaintiff's fears reasonable where trafficking, physical violence against plaintiff, and threats against plaintiff and plaintiff's family ended in 2023 and the motion was filed in 2024); *M.L. v. Craigslist*, No. C19-6153, 2020 WL 8639345, at *1 (W.D. Wash. July 8, 2020) (finding threatened harm severe where plaintiff was sex trafficked, physically beaten, and sexually assaulted, and finding plaintiff's fears reasonable, even though "there are no allegations, or declarations from M.L. about recent threats by these individuals"). Ultimately, Plaintiff's past experience of being forced into commercial sex, physically beaten, sexually assaulted, and constantly threatened—and with her traffickers' having made good on such threats—makes the threatened harm severe and shows that her current fear of the potential of future harm is reasonable, should her traffickers find out Plaintiff has brought this lawsuit.[2]

**2. Vulnerability to Retaliation**

Plaintiff is vulnerable to retaliation if her identity becomes public, because such information could lead to Plaintiff's traffickers' retaliating against her. Additionally, disclosure that Plaintiff was forced into sex trafficking would make Plaintiff vulnerable to the stigma and discrimination that could come from such information becoming public, whether through potential employment opportunities or in social scenes. *See M.L.*, 2020 WL 8639345, at *1 (finding that revealing the identity of sex trafficking victim "would lead a reasonable person to

[2] Plaintiff made additional arguments in her reply brief and submitted a declaration providing additional facts. Such arguments and the facts contained in the declaration could have been provided in the initial motion but were not, so the Court will not consider them. As a general rule, facts or arguments must be contained in the moving papers and may not be raised for the first time in a reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) (affirming district court after it declined to consider an argument raised for the first time in reply)).

conclude that she would be particularly vulnerable to being stigmatized or discriminated against in employment or other social aspects of life”). Therefore, the Court finds Plaintiff would be vulnerable to retaliation if it were to deny Plaintiff’s request to proceed anonymously.

**3. Prejudice to Opposing Party and Public Interest**

Defendant SeaTac Hotels’ arguments regarding prejudice and public interest overlap, and since it is the only Defendant that presents such arguments, the Court will evaluate these factors together. Defendant SeaTac Hotels argues that even though it will learn Plaintiff’s identity, that will not eliminate the “practical prejudice” it will face during the litigation of this case. Dkt. No. 96 at 7. But Defendant SeaTac Hotels does not explain what type of “practical prejudice” it will face in its ability to litigate the case. *See id*. Instead, Defendant SeaTac Hotels also argues that it faces prejudice because “[a]nonymous litigation creates a significant imbalance in public accountability,” due to Plaintiff’s “accus[ing] named businesses and individuals of serious misconduct while remaining shielded from comparable public scrutiny herself.” Dkt. No. 96 at 7. Defendant SeaTac Hotels cites to no authority that supports its theory that a plaintiff in a TVPRA case should not be able to proceed anonymously, because the plaintiff should be subject to “comparable public scrutiny” as the defendant. In fact, “[i]n matters involving sexual abuse or assault, courts ‘have concluded that any prejudice the defendant may face does not favor requiring the plaintiff to disclose [their] identity, and that the public’s interest in allowing alleged victims of sexual assault to proceed anonymously outweighs any public interest in the plaintiff’s identity.’” *Doe 1 v. United States*, No. C26-2624, 2026 WL 1075243, at *2 (N.D. Cal. Apr. 20, 2026) (quoting *Doe v. Mt. Diablo Unified Sch. Dist.*, No. C18-2589, 2018 WL 2317804, at *2 (N.D. Cal. May 22, 2018); *see also M.L.*, 2020 WL 8639345, at *2. Defendant SeaTac Hotels does not argue any other specific forms of prejudice it may face from Plaintiff’s proceeding anonymously, and the Court will not fill in any gaps. Given the severity of the underlying facts

in this case, the Court finds that the public's interest would not be served by requiring Plaintiff to reveal her identity. In fact, "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe v. Penzato*, No. C10-5154, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (quoting *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)).

As to the claims of potential prejudice raised by Defendants WHR, Red Lion Hotels, and the G6 Defendants regarding Defendants' access to Plaintiff's identity for purposes of investigation and defending the claim, the Court finds such concerns have been resolved by the Parties' stipulated protective order, which was submitted and entered by the Court after the briefing of the instant matter. *See* Dkt. No. 116 at 9–12 (discussing agreements regarding the use of Plaintiff's identification).

Therefore, the Court finds that allowing Plaintiff to proceed under a pseudonym will not prejudice the Defendants, and Plaintiff's interests outweigh any public interest in knowing her identity.

* * *

In totality, all of the *Advanced Textile* factors weigh in Plaintiff's favor to proceed under a pseudonym during the pre-trial phase of this matter. Accordingly, Plaintiff's motion to proceed under a pseudonym during the pre-trial phase is granted.

**B. Proceeding Under Pseudonym at Trial**

In evaluating whether a plaintiff is allowed to proceed under a pseudonym, district courts must "determine the precise prejudice at *each stage of the proceedings* to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Advanced Textile*, 214 F.3d at 1068 (emphasis added). Most cases dealing with this issue relate to the use of a pseudonym during the pre-trial phase of a case. That is likely because most civil cases settle

before ever reaching trial.[3] But, as noted by the Supreme Court, "historically both civil and criminal trials have been presumptively open." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980).

Here, Defendant WHR and Defendant Red Lion Hotels, who joined Defendant WHR's response, do not provide any substantive analysis or authority in their briefing regarding their opposition to Plaintiff proceeding anonymously at trial. *See generally* Dkt. Nos. 87, 97. The G6 Defendants provide one paragraph with legal authority that supports their opposition to Plaintiff's proceeding under a pseudonym at trial. *See* Dkt. No. 93 at 2. Plaintiff's motion asks generally to proceed under a pseudonym, but she does not make any arguments specific to the trial phase, nor does she identify any case law that discusses the use of a pseudonym at trial. *See generally* Dkt. No. 86. Plaintiff's reply clarifies that the instant motion request includes trial as well, but she still does not provide legal authority that is specific to whether the Court should allow her to proceed under a pseudonym at trial. *See* Dkt. No. 100 at 3. Given the paucity of briefing on the issue by all the Parties, the Court will not rule on whether Plaintiff may proceed under a pseudonym at trial. At this time, the issue is not sufficiently developed to allow for a complete and thorough review. Accordingly, Plaintiff's motion to proceed under a pseudonym at trial is denied without prejudice.

//

//

---

[3] In fiscal years 2010–19, only 0.7% of all civil cases terminated during or after a civil trial in federal court. *See* Emery G. Lee III and Kristin A. Garri, *Jurisdictions with a High Number of Civil Jury Trials* (March 2023), https://www.fjc.gov/sites/default/files/materials/46/Jurisdictions%20with%20a%20High%20Number%20of%20Civil%20Jury%Trials%20FJC%20021623.pdf [https://perma.cc/MY3K-KRJG]; *see also* Jeffrey Q. Smith and Grant R. MacQueen *Going, Going, But Not Quite Gone: Trials Continue to Decline*, Judicature (2017), https://judicature.duke.edu/articles/going-going-but-not-quite-gone-trials-continue-to-decline-in-federal-and-state-courts-does-it-matter/ [https://perma.cc/2EKM-PQDC] (noting that in 2017, approximately 1% of all civil cases filed in federal court are resolved by trial).

## IV. CONCLUSION

Accordingly, Plaintiff's Motion to Proceed Under Pseudonym (Dkt. No. 86) is GRANTED IN PART and DENIED IN PART. Plaintiff SHALL be allowed to proceed under a pseudonym during the pre-trial phase of this case.

Dated this 16th day of October, 2026.

Tana Lin
United States District Judge